IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | | |
|---|---|---|
| In re: | * | Chapter 11 |
| TMST, Inc. | * | |
| f/k/a Thornburg Mortgage, Inc., *et al.*, | | Case Nos. 09-17787, 17790-17792-dwk |
| | * | |
| Debtors. | | (Jointly Administered under |
| | * | Case No. 09-17787) |

\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*

| | | |
|---|---|---|
| Joel I. Sher, Chapter 11 Trustee, | * | |
| Plaintiff, | * | |
| v. | * | Adv. No. 10-00137-dwk |
| Larry A. Goldstone | * | |
| Clarence G. Simmons, III | | |
| Deborah J. Burns | * | |
| Amy Pell | | |
| SAF Financial, Inc. | * | |
| Karen A. Dempsey | | |
| and | * | |
| Orrick, Herrington & Sutcliffe LLP | | |
| | * | |
| Defendants. | | |
| | * | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

The Trustee's Complaint For Damages and Other Relief (the "Complaint") names SAF

Financial, Inc. ("SAF") in four avoidance/turnover counts (Counts III, IV, V, and VI) and an

unjust-enrichment count (Count XII). Because SAF was not a party to any transaction involving

estate property, has nothing to turn over, and was not enriched — justly or unjustly — by any

estate property, each count must be dismissed. Moreover, none of the counts is pleaded with the

requisite specificity under Federal Rules of Civil Procedure 8(a) and 9(b), also compelling

dismissal.

5092093

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

I.    Standards ................................................................................................... 2

    A.    Rule 12(b)(6) Imposes Strict Standards at the Pleading Stage. .................. 2

    B.    Federal Rule of Civil Procedure 9(b) Heightens Pleading Standards
        for Matters Alleged in Counts III and IV ................................................ 3

II.   The Complaint Fails To State A Claim Against SAF, And Must Be
    Dismissed. ................................................................................................... 4

    A.    Counts III and IV Must Be Dismissed for Failure to State a Claim
        Upon Which Relief Can Be Granted Against SAF Because These
        Transactions Are Not Avoidable or Otherwise Recoverable From
        SAF. ....................................................................................................... 4

        1.    SS&C Transfer ............................................................................. 5

            a.    The Payments From TMAC to SS&C Were Not of
                Property of the Estate ......................................................... 5

            b.    Under Code Section 550, SAF is Not a Beneficiary
                of the TMST-to-TMAC Payment. ...................................... 5

            c.    The Trustee's Conclusory Allegations Concerning
                SS&C Cannot Save Counts III and IV as Directed
                to the SS&C Payments. ....................................................... 7

        2.    Big-Tree Transfer ........................................................................ 8

            a.    SAF Is Not a Section-550 Beneficiary of the Big-
                Tree Transfer ..................................................................... 8

            b.    The Trustee's Conclusory Allegations Concerning
                Big-Tree Cannot Save Counts III and IV as
               Directed to the Big-Tree Payments ................................... 9

        3.    Ketchum Payments ................................................................... 10

            a.    SAF Is Not a Section-550 Beneficiary of the
                Ketchum Transfer. ........................................................... 10

5092093

b.      The Trustee's Conclusory Allegations Concerning Ketchum Cannot Save Counts III and IV as Directed to the Ketchum Payments................................... 11

B.      Count V Must Be Dismissed for Failure to State a Claim Upon Which Relief Can Be Granted Against SAF Because the Property Sought is Excluded From the Turnover Provisions of Code Section 542............................................................................................................ 11

C.      Count VI Must Be Dismissed For Failure to State a Claim upon Which Relief Can Be Granted Against SAF Because SAF is Not a Beneficiary and the Payments are Not Avoidable in the First Instance. ............................................................................................... 13

D.      Count XII Must Be Dismissed for Failure to State a Claim Upon Which Relief Can Be Granted Against SAF Because There Has Been No Enrichment and the Trustee is Not Entitled to His Sunk Costs................................................................................................. 15

III.    Conclusion .......................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal*, ___ U.S. ___,
129 S.Ct. 1937, 1950 (2009) ............................................................................3, 12

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ...................................3, 12

*Biktasheva v. Red Square Sports, Inc.*,
366 F. Supp. 2d 289 (D. Md. 2005) ............................................................................4

*Billsie v. Brooksbank*,
525 F.Supp.2d 1290 (D.N.M. 2007) ............................................................................15

*DDH Aviation, LLC v. Holly*,
No.Civ.A.3:03-CV-2598-R, 2004 WL 576061 (N.D. Tex. Mar. 22, 2004) ............................7

*Francis v. Giacomelli*,
588 F.3d 186 (4th Cir. 2009) ........................................................................2, 3, 12

*Haley v. Corcoran*,
659 F. Supp. 2d 714 (D. Md. 2009) ........................................................................3

*Harrison v. Westinghouse Savannah River Co.*,
176 F.3d 776 (4th Cir. 1999) ........................................................................3

*In re Am. Honda Motor Co., Inc. Dealerships Relations Lit.*,
941 F.Supp. 528 (D. Md. 1996) ........................................................................7, 16

*In re Bonded Fin. Svcs., Inc.*,
838 F.2d 890, 895 (7th Cir. 1988) ........................................................................6

*In re Intern. Mngm't Assoc.*,
399 F.3d 1288 (11th Cir. 2005) ........................................................................6

*In re Matheny*,
138 B.R. 541 (Bankr. S.D. Ohio 1992) ........................................................................12

*In re Meredith*,
527 F.3d 372 (4th Cir. 2008) ........................................................................6

*In re Southeast Hotel Props. Ltd. P'ship*,
99 F.3d 151 (4th Cir. 1996) ........................................................................14

*In re Verestar, Inc.*,
343 B.R. 444 (S.D.N.Y. 2006) ........................................................................7

*Kyte v. College of Southern Maryland*,
    No. DKC 2003-2558, 2005 WL 396306 (D. Md. Feb. 18, 2005) ..........................................13

*Learning Works, Inc. v. The Learning Annex, Inc.*,
    830 F.2d 541 (4th Cir. 1987) ...........................................................................................4

*Ontiveros Insulation Co., Inc. v. Sanchez*,
    129 N.M. 200, 3 P.3d 695 (N.M. Ct. App. 2000) .................................................15

*Perkins v. State Farm Ins. Co.*,
    589 F. Supp. 2d 559 (M.D. Pa. 2008) ...............................................................4

*Raceredi Motorsports, LLC v. Dart Mach., Ltd.*,
    640 F.Supp.2d 660 (D. Md. 2009) ...................................................................15

*Rupp v. Markgraf*,
    95 F.3d 936 (10th Cir. 1996) ..............................................................................6

*Russo v. Ballard Medical Products*,
    550 F.2d 1004 (10th Cir. 2008) .......................................................................16

*Spagnola v. Chubb Corp.*,
    264 F.R.D. 76 (S.D.N.Y. 2010) .........................................................................7

*U.S. ex rel. Elms v. Accenture LLP*,
    341 Fed. Appx. 869, No. 07-1361, 2009 WL 2189795 (4th Cir. July 22, 2009)......................4

## STATUTES

11 U.S.C. § 363 .....................................................................................................12

11 U.S.C. § 542 .....................................................................................................11

11 U.S.C. §  542(a) ...............................................................................................12

11 U.S.C. § 544 ......................................................................................................5

11 U.S.C. § 548 ......................................................................................................5

11 U.S.C. § 549 ................................................................................................14, 15

11 U.S.C. § 549(a)(2) ............................................................................................14

11 U.S.C. § 550 ...................................................................................5, 6, 10, 11, 13

11 U.S.C. § 550(a) ..................................................................................................6

**OTHER AUTHORITIES**

Fed. R. Bankr. P. 7012 ..................................................................................................2

Fed. R. Civ. P. 8 .........................................................................................................2

Fed. R. Civ. P. 8(a) and 9(b) ...............................................................................cover

Fed. R. Civ. P. 9 .........................................................................................................2

Fed. R. Civ. P. 9(b) ..................................................................................................3, 4

Fed. R. Civ. P. 12(b)(6) ..........................................................................................2, 3

Fed. R. Civ. P. 12(e) .................................................................................................13

Fed. R. Civ. P. 41(d) ................................................................................................13

## INTRODUCTION

The Trustee's allegations relate largely to a single business idea, which the Trustee calls "intellectual property."  That "intellectual property" was not a patent, trademark, copyright, or any type of secret formula, device, or innovative business strategy.  It was a business idea that debtor TMST, Inc. ("TMST") abandoned when it became obvious that TMST was completely incapable of continuing its pursuit.

At the same time, TMST continued to pay its workers and vendors, and meet its obligations to Thornburg Mortgage Advisory Corporation ("TMAC").  Some other payments were made by TMAC which, as admitted in the Complaint, is still controlled by Garrett Thornburg who was until October 2009 chairman of TMST's Board of Directors.  For reasons unexplained by the Chapter 11 Trustee (the "Trustee"), TMAC and Garrett Thornburg managed to escape the Trustee's dragnet.  (*See* Compl. at ¶ 26.)

The Trustee now seeks payment from SAF for TMST's or TMAC's worker and vendor payments (Counts III and IV), and TMST's valueless— and not misappropriated— "intellectual property" (Count V).  Because the "intellectual property" has no value, the Trustee seeks payment from SAF for the costs TMST sunk into its abandoned business idea.  (*See* Compl. ¶ 112 ("several Board members agreed that the Debtors were no longer able to pursue" this idea).)  The Trustee actually seeks this payment even though its own lawyers advised that there was no liability for the use of this idea once TMST was no longer able to use it.  (*See* Compl. ¶ 125.)

Simply put, the Trustee is seeking the return of property SAF does not have, and from which SAF received no "enrichment" whatsoever because the property was valueless, abandoned, and, in some instances, transferred to others whom the Trustee has failed to name as defendants.

1

For these reasons, discussed more fully below, SAF moves to dismiss the Complaint.

## I.    Standards

### A.    Rule 12(b)(6) Imposes Strict Standards at the Pleading Stage.[1]

A Rule 12(b)(6) motion tests the sufficiency of a complaint. *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citing *Jordan v. Alternative Resources Corp.*, 458 F.3d 332, 338 (4th Cir. 2006)). The Fourth Circuit has described in detail the applicable rules and the attendant requirements that must be met to avoid dismissal of complaints as legally insufficient. "[T]he legal sufficiency of a complaint is measured by whether it meets the standards for a pleading stated in[,] [among other rules,] Rule 8 (providing general rules of pleading) [and] Rule 9 (providing rules for pleading special matters) …." *Id*. The purposes of the strict pleading standards include assuring that each defendant has adequate notice of the nature of the plaintiff's claims, providing criteria for defining trial issues, and to provide for early disposition of inappropriate complaints. *Id*. (*citing* 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 1202, at 88 (3d ed. 2004)). Early disposition is favored in part because of the high cost of litigation. See *id*. at 193.

For these reasons and others, pleading requirements go well beyond notice pleading and require a good measure of factual support.

> [M]any … provisions impos[e] requirements that permit courts to evaluate a complaint for sufficiency early in the process. Rule 8 itself requires a *showing* of entitlement to relief. Rule 9 requires that allegations of fraud, mistake, time, place, and special damages be specific. Rule 11 requires that the pleading be signed and provides that the signature "certifies" (1) that the claims in the complaint are not asserted for collateral purposes; (2) that the claims asserted are "warranted"; and (3) that the factual contentions "have evidentiary support." And Rule 12(b)(6) authorizes a court to dismiss any complaint that does not state a claim "upon which relief can be granted."

---

[1] Federal Rule of Civil Procedure 12(b) is made applicable here by Federal Rule of Bankruptcy Procedure 7012.

*Id*. at 192-193.  The strict and abundant pleading requirements thereby establish "that plaintiffs may proceed into the litigation process only when their complaints are justified by both law and fact."  *Id*. at 193.  To justify a complaint, the plaintiff must do more than provide "labels," … "conclusions, and a formulaic recitation of the elements of a cause of action."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  "To discount such unadorned conclusory allegations, 'a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'"  *Francis*, 588 F.3d at 193 (citing *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1950 (2009)).

In sum, these requirements demand more than a statement of possibility.  The plaintiff must "articulate facts, when accepted as true, that '*show*' that the plaintiff has stated a claim entitling him to relief …."  *Id*.  (emphasis added).  Where "a context-specific" review of a complaint reveals only the "possibility of misconduct," the complaint has not shown an entitlement to relief and must be dismissed.  See *id*.

**B.      Federal Rule of Civil Procedure 9(b) Heightens Pleading Standards for Matters Alleged in Counts III and IV.**

Where a complaint "alleges fraud or when 'the gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud,' Rule 9(b) requires that 'the circumstances constituting fraud be stated with particularity.'"  *Haley v. Corcoran*, 659 F. Supp. 2d 714, 720 (D. Md. 2009).  The failure to comply with Rule 9(b) pleading requirements is "treated as a failure to state a claim under Rule 12(b)(6)."  *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 n.5 (4th Cir. 1999).

Rule 9(b) "is aimed at [preventing] fishing expeditions.  'The clear intent of [the rule] is to eliminate fraud actions in which all the facts are learned through discovery after the complaint

is filed.'"  *U.S. ex rel. Elms v. Accenture LLP*, 341 Fed. Appx. 869, 872, No. 07-1361, 2009 WL

2189795, *2 (4th Cir. July 22, 2009) (dismissing fraud claim).  To satisfy the Rule 9(b) pleading

requirements, a party must "allege the time, place, and contents of the false representations, as

well as the identity of the person making the representation and what he obtained thereby."  *Id*. at

873.  *See also Biktasheva v. Red Square Sports, Inc.,* 366 F. Supp. 2d 289, 295-96 (D. Md. 2005)

(dismissing fraud claim for failing to plead with particularity "the time [and] place of the alleged

fraud, [as well as] the specific identity of the alleged perpetrator").  Reliance is also an element

of fraud under Maryland law, and under Rule 9(b) it too must be pleaded with particularity.  See

*Perkins v. State Farm Ins. Co.*, 589 F. Supp. 2d 559, 567-68 (M.D. Pa. 2008); *Learning Works,*

*Inc. v. The Learning Annex, Inc.*, 830 F.2d 541, 545 (4th Cir. 1987) (dismissing fraud claim for

failing to plead reliance with particularity).

    The Complaint contains at least two counts against SAF in which the word "fraud" (or

"fraudulent") is used but not pleaded with particularity.  Those counts are Counts III and IV.

Because they are not pleaded with particularity— as described below— they do not meet the

heightened pleading standards for fraud claims and must be dismissed.

**II.    The Complaint Fails To State A Claim Against SAF, And Must Be Dismissed.** [2]

> **A.    Counts III and IV Must Be Dismissed for Failure to State a Claim Upon Which Relief Can Be Granted Against SAF Because These Transactions Are Not Avoidable or Otherwise Recoverable From SAF.**

    Counts III and IV involve three payments for which TMST alleges that SAF is liable

under Code sections 544, 548, and 550.[3]  These three separate payments were made by either

---

[2] Where the Complaint is cited or referenced, SAF does not admit the truth of factual allegations contained in the Complaint but instead assumes any well-pleaded allegations to be true only for purposes of this motion to dismiss, or otherwise cites the Complaint as indicative of the plaintiff's allegations.

[3] Count IV contains no new factual allegations but instead merely recites the elements of a claim under 11 U.S.C. § 544.

TMST or TMAC to the following vendors:  (1) Big Tree Inc. d/b/a 3t Systems ("Big Tree");

(2) SS&C Technologies Inc. ("SS&C"); and (3) Ketchum.  (Compl. ¶ 170.)  None were made to

SAF.  As a matter of law, SAF is not liable for any of these payments, which are addressed

separately below.

As a preliminary matter, one similarity between each of these vendor payments is that

each may be recovered *from the transferee-vendors* if the transfers actually are recoverable under

sections 544 or 548.  The failure of the Trustee to seek recovery from the actual transferees, who

clearly and directly benefited from the payments, undermines any notion that a cause of action

exists under section 544 or 548 of the United States Bankruptcy Code (the "Code").

### 1.    SS&C Transfer

Allegations relating to payments to SS&C suffer from at least two fatal flaws: the

payments do not involve estate property, and SAF was not a beneficiary of those payments.

### a.    The Payments From TMAC to SS&C Were Not of Property of the Estate.

*First*, the payments made to SS&C were made by TMAC and not by TMST.  The Trustee

alleges in the Complaint that the relevant payments to SS&C were actually two distinct payments

made by TMAC, and not by TMST.  (Compl. ¶¶ 91, 170.)  As such, it is impossible for the

conclusory allegation in the Complaint to be true that these same "payments to … SS&C …

constitute transfers of an interest in property of TMST."  (Compl. ¶ 170.)  There is no allegation

here that TMST had any interest whatsoever in TMAC's funds.  As a matter of law, this

allegation is not well-pleaded and must be dismissed.

### b.    Under Code Section 550, SAF is Not a Beneficiary of the TMST-to-TMAC Payment.

*Second*, there is no showing that SAF was a beneficiary of the payments.  The Trustee

attempts to overcome the non-TMST-property problem by making the conclusory allegation that

the TMST-to-TMAC payment relating to SS&C was "to or for the respective benefit of Messrs. Goldstone, Simmons and SAF (sic)."  (Compl. ¶ 175.)  This allegation is wrong as a matter of law.

As a matter of law, SAF is not a beneficiary under Code section 550 because there is no allegation or showing that SAF actually received benefits from the payment.  In simple terms, a beneficiary in this context is "someone who receives the benefit but not the money."  *In re Meredith*, 527 F.3d 372, 375 (4th Cir. 2008) (citing *In re Columbia Data Prods., Inc.*, 892 F.2d 26, 29 (4th Cir. 1989), quoting *Bonded Fin. Servs., Inc. v. European Am Bank*, 838 F.2d 890, 895 (7th Cir. 1988)).  Typically, this beneficiary is "a debtor of the transferee or the guarantor of a debt owed by the bankrupt party to the transferee."  *Id.*; *In re Intern. Mngm't Assoc.*, 399 F.3d 1288, 1292-1293 (11th Cir. 2005) ("The paradigm case of a benefit under § 550(a) is the benefit to a guarantor by the payment of the underlying debt of the debtor") (citing *In re Coggin*, 30 F.3d 1443, 1453 (11th Cir. 1994); 5 Collier on Bankruptcy ¶ 550.02[4] at 550-17 (15th ed. 1984); *In re Finley, Kumble, et al.*, 130 F.3d 52, 57 (2d Cir. 1997); *In re Bonded Fin. Svcs., Inc.*, 838 F.2d 890, 895 (7th Cir. 1988)).

While a beneficiary need not fit neatly into the paradigm example of a guarantor of the debtor's debt, "a person must actually receive a benefit from the transfer in order to be an 'entity for whose benefit' the transfer was made."  *In re Meredith*, 527 F.3d at 376.  "The example of a debt and a guarantor affords some insight into the intention of Congress in enacting § 550(a)."  *In re Intern. Mngm't Assoc.*, 399 F.3d at 1293.  Congress intended to balance the equities in the context of a challenged transfer, and the Trustee can go no further to impose his own view.  *Rupp v. Markgraf*, 95 F.3d 936, 944 (10th Cir. 1996) ("In most, if not all, bankruptcy cases someone is going to be injured … [, but] Congress has already balanced the equitable considerations under

Section(s) 550 by distinguishing between initial transferees, who are strictly liable, and [others] … who are not strictly liable.").  As Congress intended, TMAC may be deemed strictly liable for repayment of the funds paid to it by TMST, but SAF may not be.

In fact, the Trustee actually fails even to assert that SAF was a beneficiary.  Instead, the Trustee asserts that SAF was the *intended* beneficiary.  (*See* Compl. ¶ 89.)  The Complaint states that the paid vendors, including SS&C, were those "viewed as necessary for NEWCO's success."  (Compl. ¶ 89.)  NEWCO is the Trustee's synonym for SAF.  (Compl. ¶ 106.)  Here again, reading the Complaint as broadly as possible— even if inappropriately so— the allegation is that TMAC paid SS&C so that NEWCO would obtain a benefit.  (*See* Compl. ¶ 91.)  The Complaint fails to explain how NEWCO would benefit from paying this vendor for past services or software.  Nor does this allegation show any real benefit to SAF and does not rise above the speculative level.[4]

c.     **The Trustee's Conclusory Allegations Concerning SS&C Cannot Save Counts III and IV as Directed to the SS&C Payments.**

The Trustee improperly conflates in Counts III and IV a TMAC transaction and a subsequent TMST reimbursement of TMAC into a single subset of "Vendor Payments."

---

[4] While trying to blur or erase the lines between corporations and individuals, the Trustee, without any factual support, alleges that SAF was an alter ego of both Larry A. Goldstone ("Goldstone") and Clarence G. Simmons III ("Simmons").  (Compl. ¶ 117.)  Because the Trustee has no support whatsoever for this false and conclusory allegation, he cannot assert an alter ego theory of liability, and the counts relying on it must be dismissed as a matter of law.  Courts routinely dismiss alter ego claims where, as here, they are not adequately pleaded.  The District Court for the District of Maryland has held this type of unsupported alter-ego claim to be insufficient.  See *In re Am. Honda Motor Co., Inc. Dealerships Relations Lit.*, 941 F.Supp. 528, 551-552 (D. Md. 1996) (holding that, where complaints summarily refer to the corporation's "alter ego" several times but only offered limited factual allegations related to this assertion, plaintiffs' allegations were insufficient); *Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 87-88 (S.D.N.Y. 2010) ("Plaintiffs must plead sufficient allegations to make their claim of alter-ego liability plausible and more than the 'mere possibility of misconduct.'"); *In re Verestar, Inc.*, 343 B.R. 444, 464-65 (S.D.N.Y. 2006) ("Claims of alter ego liability must be pleaded with particularity, and 'it is not sufficient, at the pleading stage, to make conclusory allegations of control'") (citing *In re Sunbeam Corp.*, 284 B.R. 355, 366 (Bankr. S.D.N.Y. 2002)); *DDH Aviation, LLC v. Holly*, No.Civ.A.3:03-CV-2598-R, 2004 WL 576061, at *4 (N.D. Tex. Mar. 22, 2004) (because complaint made no factual allegations in support of an alter ego theory of liability for individual, and only stated that individual and corporate entity were doing business as each other without averring any facts to support such conclusion, motion to dismiss was granted).

(Compl. ¶ 170.)  No matter how the Trustee chooses to label these separate transactions, he cannot allege facts sufficient to refute the basic fact that TMST received reasonably equivalent value for TMAC's and SS&C's goods and services.  The Trustee admits in the Complaint that TMST partially "but never fully implemented" the SS&C-licensed computer software,   (Compl. ¶ 91.), and then further admits that TMAC paid SS&C for April 2009 services.  (*Id.*) Additionally, based upon the allegations of the Complaint, the TMST-to-TMAC payment was made under a standing "amended management agreement" between TMST and TMAC, (Compl. ¶ 28), or under a "Second Amended Management Agreement" approved by the Board of Directors on April 8, 2009.  (Compl. ¶ 81.)  The Second Amended Management Agreement provided for any TMST-to-TMAC reimbursement on the 15th and 30th of each month, and the second transaction, between TMST and TMAC, occurred on April 30, 2009.  (Compl. ¶¶ 29, 91.) Without some factually based allegation that TMAC or SS&C did not earn and were not contractually entitled to their respective payments, there is no basis for the contrary conclusion the Court is asked to draw, which, again, does not rise above the speculative level.

          **2.**       **Big-Tree Transfer**

              **a.**       **SAF Is Not a Section-550 Beneficiary of the Big-Tree Transfer.**

     Here again, SAF is neither the transferee nor the beneficiary of the vendor payment. Clearly, the primary beneficiary of the payment was Big Tree, who was paid for its software. The secondary beneficiary here, beyond Big Tree as the primary beneficiary, is TMST's co-debtor, Thornburg Mortgage Home Loans Inc. ("TMHL," n/k/a TMST Home Loans, Inc. (Compl. at p. 1)).  According to the Complaint, at some time before the bankruptcy, TMST entered into an agreement with Big Tree (a/k/a 3t) by which TMHL would pay a licensing and support fee for Mortgage Cadence.  (Compl. ¶ 90.)  In return, TMHL or TMST "acqui[red] … extended licenses" from Big Tree.  (*Id*.)  The Trustee goes on to argue that there is a third-level

beneficiary: NEWCO. (*Id.*) The Trustee does not explain how the extended licenses given to TMHL or TMST could possibly provide NEWCO with some benefit. The Trustee's naked allegation, made without supporting facts, that the payment was made so that "Mortgage Cadence would be available for [NEWCO's] use" (*Id.*), does not explain how SAF could use licenses given to TMHL or TMST.

Because Counts III and IV are nothing more than sheer speculation, they must be dismissed.

> **b.    The Trustee's Conclusory Allegations Concerning Big-Tree Cannot Save Counts III and IV as Directed to the Big-Tree Payments**

The Trustee again makes naked allegations simply reciting the elements of the statutes by which he seeks avoidance. And, again, the factual allegations in the Complaint are either absent or refute the conclusory allegations.

For example, TMST is alleged to have actually received reasonably equivalent value for the payment, in contradiction to the conclusory allegation contained in paragraphs 172 and 181 of the Complaint. As described, *supra*, TMHL or TMST actually received an extended license for use of Big Tree's product. (Compl. ¶ 90.) There is no allegation that the licenses went to NEWCO for its use. (*Id.*) The Trustee's allegation is simply that *TMHL* had no present intention to use the product it purchased, (Complaint at ¶ 90), which obviously fails to address whether *TMST* received value. The Complaint is clear that TMST and TMHL each conducted operations as a REIT, (Compl. ¶¶ 19-20), and there is no showing that TMST did not use or voluntarily extend the Big Tree licenses. Moreover, there is no allegation that TMST's payment was not authorized by the TMST Board of Directors, or that the Board was otherwise not fully supportive of the license extension.

### 3.    Ketchum Payments

#### a.    SAF Is Not a Section-550 Beneficiary of the Ketchum Transfer.

As with the SS&C and Big-Tree allegations, the allegations relating to Ketchum do not rise above the speculative level.  Moreover, the conclusory allegation that Code section 550 applies against SAF is actually refuted by the other allegations in the Complaint.

Here, the allegation is that Ketchum is an "investor relation (sic) and marketing firm" with whom TMST "had a long-standing relationship."  (Compl. ¶ 92.)  During this long-standing relationship and "[i]n the ordinary course, TMST paid Ketchum a quarterly retainer of $150,000.00, plus out-of-pocket expenses."  (*Id.*)  The first quarter invoice was sent by Ketchum on January 5, 2009 and was paid by TMST in February 2009, and the Trustee does not take issue with that payment.  (Compl. ¶ 92.)  The second quarter invoice was sent by Ketchum on March 13, 2009, and was paid by TMST on March 16, 2009.  (Compl. ¶ 93.)

There is no explanation as to why this March payment is different than the other payments made in the ordinary course of the long-standing relationship between TMST and Ketchum.  Notwithstanding this fact, the Trustee demands repayment from SAF, while at the same time failing to even allege that TMST has a right to seek relief from Ketchum itself.  There is no allegation that the retainer was not due or that the invoice should not have been paid.  There is no allegation that the Board of Directors of TMST terminated the long-standing relationship TMST had with Ketchum.

Instead, the Complaint proceeds on the unsupportable conclusory allegation that this payment was similarly for the benefit of NEWCO.  Specifically, the allegation is that Goldstone and Simmons had "targeted Ketchum" as a "critical vendor for NEWCO," and then TMST paid the invoice upon Simmons's uncontradicted approval, (Compl. ¶¶ 92, 93), without explaining how NEWCO benefited from TMST paying its bill to Ketchum.

In sum, the Trustee is asking this Court to impose liability on SAF because of a supposed desire for NEWCO to use Ketchum at some future time.  There is no appropriate reading of section 550 that imposes such liability without any factual showing how, if at all, SAF was actually benefited by the Ketchum payment.

> **b.**    **The Trustee's Conclusory Allegations Concerning Ketchum Cannot Save Counts III and IV as Directed to the Ketchum Payments.**

In addition to the lack of any showing of an SAF benefit by virtue of the Ketchum payments, the Complaint fails to satisfy the other elements of the statutes by alleging any factual basis for the claims.  For example, on the one hand, the Trustee alleges that there was no reasonably equivalent value conferred by payment to Ketchum.  (Compl. ¶¶ 172, 181.)  On the other hand, the Trustee admits that Ketchum and TMST had a "long-standing relationship" and TMST paid Ketchum a quarterly retainer "in the ordinary course."  (Compl. ¶ 92.)  These quarterly retainers, according to the Trustee, were paid in the beginning of each quarter to cover the following three months.  (*Id*.)  By these admissions, it is clear that Ketchum's availability had long been and continued to be sufficient value to justify the payments.  Given these admissions, the conclusory allegation gains no support from the fact that TMST ended up receiving little value in the second quarter after paying a retainer and then heading towards bankruptcy.  The fact is that the conclusory allegation is at odds with the long-standing relationship and routine payments that had conferred enough value to keep the relationship going and then slowed in the pre-bankruptcy quarter.

> **B.**    **Count V Must Be Dismissed for Failure to State a Claim Upon Which Relief Can Be Granted Against SAF Because the Property Sought is Excluded From the Turnover Provisions of Code Section 542.**

Count V demands that SAF turn over a laundry list of "tangible" and "intangible" property, failing to give even the slightest hint as to what tangible books, records or "decks" are

in SAF's possession and why they belong to TMST.  As to the "intangible" property, it is even more difficult to discern what the Trustee is seeking.  Not only is it unclear what "intangible" property the Trustee believes is in SAF's possession, but it is also unclear how SAF would turn over that "intangible" property.

Count V fails to meet the minimum standards for pleading.  In order to adequately state a cause of action for turnover under 11 U.S.C. 542(a), a plaintiff must allege the following:  (1) that the property is in the possession, custody, or control of another entity; (2) that the property can be used in accordance with Code section 363 as property of the estate; and (3) that the property has more than an inconsequential value to the debtor's estate.  *See In re Matheny*, 138 B.R. 541, 548 (Bankr. S.D. Ohio 1992) (citing 11 U.S.C. § 542(a)).  Here, the Trustee has not alleged any facts sufficient to sustain any of these elements.

Again, the Trustee never identifies, with any specificity, what property is in SAF's possession.  Instead, the Trustee uses generic categories of things, *e.g.*, "various books, compilations, financial and accounting records, decks and other tangible and intangible property."  (Compl. ¶ 186.)  Since the Trustee does not identify the property allegedly taken and in SAF's possession, the Trustee cannot allege that the property can be used in accordance with Code section 363 or that that the property has more than an inconsequential value to the estate.  As such, Count V should be dismissed.  *Francis*, 588 F.3d at 193 (a complaint must reveal more than the mere possibility of entitlement to relief in order to survive a motion to dismiss) (citing *Iqbal*, 129 S.Ct. at 1950; *Twombly*, 550 U.S. at 570).

Alternatively, the Trustee should be compelled to provide a more definite statement of his claim, pursuant to Federal Rule of Civil Procedure 12(e), including a specification as to the specific property which he seeks to be turned over.[5]

**C.    Count VI Must Be Dismissed For Failure to State a Claim upon Which Relief Can Be Granted Against SAF Because SAF is Not a Beneficiary and the Payments are Not Avoidable in the First Instance.**

Count VI involves TMST non-executive payroll expenses purportedly paid by TMST post-petition. The Trustee seeks to recover the value of these TMST wages from SAF and not from the employees. The Trustee's theory is apparently an offshoot of his earlier, flawed arguments relating to Counts III and IV. Here, the allegation is that SAF is liable as a beneficiary of TMST's non-executive-payroll expenses under Code section 550. As a matter of law, it is not.

The factual allegations in the Complaint do not make a showing that SAF is liable under section 550. In one place, the Trustee alleges in conclusory fashion that SAF payroll costs were paid post-petition by TMST, (Compl. ¶ 191), but then alleges specifically in another that TMST employees were *not* paid for SAF work. More specifically, a TMST employee "directed" that employees doing work for both TMST and SAF were *not* to be paid at all for work done for SAF. (Compl. ¶ 141.) The Trustee seems to have confused the facts he pleaded with the relief he wants. According to the allegations, TMST employees were instructed to report hours worked on SAF matters even though they would not be paid for them. (Compl. ¶ 141.) There is

---

[5] Count V raises the same turnover claim that was previously asserted in the complaint filed by the Debtors in Adversary No. 09-00689, which was voluntarily dismissed by the Trustee. Accordingly, to the extent that Count V is not dismissed with prejudice, SAF requests relief under Federal Rule of Civil Procedure 41(d) by which Count V should be stayed until the Trustee reimburses SAF for all fees and costs incurred in the previous action. *See Kyte v. College of Southern Maryland*, No. DKC 2003-2558, 2005 WL 396306, at *2 (D. Md. Feb. 18, 2005) ("Most courts that have considered the question determine that attorney's fees can be part of the contingency costs that must be paid if a new action is filed.").

no allegation of fact to suggest that any TMST employee was actually paid for SAF time recorded. To the contrary, the allegations are that no such payments were made. (*See* Compl. ¶ 141.) Accordingly, even assuming *arguendo* that recategorized employees were being improperly designated, there is no right to recover for unpaid amounts found only in accounting entries.[6]

The Trustee has also failed to plead any facts to show that these TMST-employee payments were not ordinary-course payments unrecoverable under Code section 549 as a matter of law. Section 549 does not allow avoidance of a transaction that is authorized under Title 11. Fed. R. Civ. P. § 549(a)(2); *In re Southeast Hotel Props. Ltd. P'ship*, 99 F.3d 151, 153 n. 3 (4th Cir. 1996). The Trustee was appointed in October 2009, and the Debtors operated as debtors-in-possession from the petition date through September 2009, when the payroll expenses allegedly ended. (Comp. ¶ 143.) Payments during that time are authorized as "ordinary-course" payments. See *In re Southeast Hotel Props.*, 99 F.3d at 153 n.3 (The Trustee has "the authority to operate the debtor's business, and … the debtor-in-possession [has] all of the powers given to a trustee under Chapter 11," including "the authority to enter into transactions in the ordinary course of business without notice or hearing …." (citations omitted)). There is no showing that payment of TMST's payroll expenses during the bankruptcy proceeding were anything other than ordinary-course payments. In fact, the allegations are as follows: (1) There were employees needed for the company's wind down, (Compl. ¶ 129); (2) Those employees were to "log all hours worked and available for work (in the building)" on bankruptcy matters, (Compl.

---

[6] This confusion may also have led to the Trustee's failure to state with any particularity whether the $400,000 he seeks was paid pre-petition or post-petition. In fact, whereas the conclusory allegation is that the payments may be avoided under Code section 549 as post-petition transfers, (Compl. ¶ 191), the incorporated allegations are that the payments began pre-petition and at least some of those pre-petition payments are included in the amount sought under Count VI. (*See* Compl. ¶¶ 143-144.) This additional infirmity is yet another ground for dismissal of Count VI.

¶ 138); (3) Hours worked for SAF were logged in a separate, non-bankruptcy computer system, (*Id.*); and (4) TMST employees who worked on bankruptcy matters (*e.g.*, the wind down), were paid by TMST (Compl. ¶ 141.)  Given that these employee-payroll expenses were directly related to work for TMST, there is certainly no allegation sufficient to sustain the claim that they fall within section 549 as unauthorized payments.

      **D.**     **Count XII Must Be Dismissed for Failure to State a Claim Upon Which Relief Can Be Granted Against SAF Because There Has Been No Enrichment and the Trustee is Not Entitled to His Sunk Costs.**

The Trustee has failed to state a claim for unjust enrichment against SAF, as the Complaint fails to allege facts sufficient to meet the two prongs of an unjust enrichment claim. To prevail on a claim of unjust enrichment in New Mexico[7], one must show that (1) another has been knowingly benefitted at one's expense, (2) in a manner such that allowance of the other to retain the benefit would be unjust.  *Ontiveros Insulation Co., Inc. v. Sanchez*, 129 N.M. 200, 204, 3 P.3d 695, 698 (N.M. Ct. App. 2000).  For the claim to survive, the Trustee must be able to show that SAF clearly benefitted.  See *Billsie v. Brooksbank*, 525 F.Supp.2d 1290, 1298 (D.N.M. 2007) (court held that plaintiff was unable to show that defendant benefitted from the transaction, which is required as the first element of an unjust enrichment claim in New Mexico). The Trustee has failed to plead any benefit to SAF or any detriment to TMST.

The mere conclusory statement that SAF used ideas that had been discussed and abandoned by TMST fails to show or specifically allege any actual benefit to SAF.  Similarly, the broad and ambiguous allegation that SAF used the "Debtors' employees, offices, hardware, software, intellectual property, monies and other assets … for [Goldstone's and Simmons's] own

---

[7] Because an unjust enrichment claim is a quasi-contract claim, choice of law would follow the doctrine of *lex loci contractus*, applying the substantive law of the place where the contract was formed." *Raceredi Motorsports, LLC v. Dart Mach., Ltd.*, 640 F.Supp.2d 660, 665 (D. Md. 2009).  Therefore, New Mexico law would govern.

personal gain," (Compl. ¶ 223), fails to describe or identify any benefits SAF received; rather, the Complaint simply describes various asset classes without any allegations of the *actual benefits* any *actual assets* may have brought to SAF. Because the Trustee has failed to show either one of the two required elements to state an unjust enrichment claim, Count XII must be dismissed.

Further, even if the Trustee were able to show that SAF knowingly benefitted at TMST's expense, and the Trustee could show that SAF's retention of such benefit is unjust— both of which he has plainly failed to do — the Complaint fails to specify damages as required for an unjust enrichment claim. A plaintiff can only be awarded the "damages it has suffered, or the amount the defendant has been enriched, by virtue of the defendant's misconduct." *Russo v. Ballard Medical Products*, 550 F.2d 1004, 1016 (10th Cir. 2008). The Trustee has failed to allege facts to show any link between any alleged misconduct— which is the alleged use of TMST's work product— and the damages alleged to include the TMST's sunk costs, payroll, and vendor expenses. (Compl. ¶ 226.) The Trustee has not shown that any use of the "work product" caused or could have caused TMST to make any of the payments it lists in its prayer for relief. Without a causal link, the claim fails.

Finally, the baseless alter-ego allegation is repeated in Count XII, this time to allege that SAF benefitted because Goldstone and Simmons benefitted. (Compl. ¶ 224.) As discussed *supra* (at note 4), a number of courts have dismissed alter ego claims where not adequately pleaded, including the United States District Court for the District of Maryland in *In re American Honda Motor Co.*, 941 F.Supp. at 551-552. The Trustee cannot simply use the term "alter ego" in the Complaint to sufficiently state a claim of alter ego liability as to SAF.

### III.   Conclusion

Because the Complaint lacks any specifics, and because SAF has no property belonging to the estate and received no benefits from any TMST property, and for all of the reasons described above, the Complaint must be dismissed as to SAF.

Dated: May 3, 2010                    Respectfully Submitted,

/s/ Samuel Rosenthal, Esquire
Samuel Rosenthal (6170)
Mark A. Salzberg (*pro hac vice*)
Barry Reiferson (*pro hac vice*)
PATTON BOGGS LLP
2550 M Street, NW
Washington, DC 20037-1350
Tel:    (202) 457-6321
Fax:    (202) 457-6315

*Counsel for SAF Financial, Inc.*