**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

| | | |
|---|---|---|
| In re: | * | |
| | | Chapter 11 |
| TMST, Inc. | * | |
| f/k/a Thornburg Mortgage, Inc., *et al.*, | | Case Nos. 09-17787, 17790-17792-dwk |
| | * | |
| Debtors. | | (Jointly Administered under |
| | * | Case No. 09-17787) |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

| | | |
|---|---|---|
| Joel I. Sher, Chapter 11 Trustee, | * | |
| | | |
| Plaintiff, | * | |
| | | |
| v. | * | Adv. No. 10-00137-dwk |
| | | |
| Larry A. Goldstone | * | |
| Clarence G. Simmons, III | | |
| Deborah J. Burns | * | |
| Amy Pell | | |
| SAF Financial, Inc. | * | |
| Karen A. Dempsey | | |
| and | * | |
| Orrick, Herrington & Sutcliffe LLP | | |
| | * | |
| Defendants. | | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

Defendants Larry A. Goldstone ("Goldstone") and Clarence G. Simmons, III

("Simmons") (collectively the "Movants") submit this Memorandum in support of their motion

to dismiss the Trustee's Complaint For Damages and Other Relief (the "Complaint") because

each count fails to state a claim upon which relief can be granted, including the lack of requisite

particularity under Fed. R. Civ. P. 8(a) and 9(b).

5091147

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................... 1

    I.      Standards .......................................................................................... 4

           A.    Rule 12(b)(6) Imposes Strict Standards at the Pleading Stage. ................. 4

           B.    Counts I-IV, X and XI  Fail to  Meet Heightened Pleading
                Standards Under Federal Rule of Civil Procedure 9(b). ........................... 5

    II.     The Complaint Fails To State A Claim, And Must Be Dismissed. ...................... 6

           A.    Because Counts I and II Allege Transfers Involving TMAC, Rather
                Than Transfers To or For the Benefit of the Movants, Those
                Counts Fail to State a Claim Upon Which Relief Can Be Granted. ........... 6

                1.    Because No Property of the Debtor Went to the Movants,
                      the Transactions Cannot Be Avoided Here. ..................................... 7

                2.    Even Treating the Various Transactions As Involving
                      TMST Property, the Trustee Still Has Failed to Plead
                      Sufficient Facts to Avoid Any Transfer. ........................................ 10

                  3.    The Trustee Cannot Hold the Movant Liable for Payments
                      To and For the Benefit of TMAC. ................................................ 12

            B.    Counts III and IV Must Be Dismissed for Failure to State a Claim
                  Upon Which Relief Can Be Granted Against the Movants Because
                  These Transactions Are Not Avoidable or Otherwise Recoverable
                From the Movants. ................................................................................... 16

                1.    SS&C Transfer ........................................................................... 16

                      a.    The Payments From TMAC to SS&C Were Not of
                          Property of the Estate. ................................................... 16

                        b.    Under Code Section 550, The Movants are Not
                          Beneficiaries of the TMST-to-TMAC Payment. .............. 17

                      c.    The Trustee's Conclusory Allegations Concerning
                          SS&C Cannot Save Counts III and IV as Directed
                          to the SS&C Payments. .................................................. 18

                  2.    Big-Tree Transfer ...................................................................... 18

                      a.    The Movants are Not Section-550 Beneficiaries of
                          the Big-Tree Transfer. ................................................... 18

i

b.      The Trustee's Conclusory Allegations Concerning
Big-Tree in Counts III and IV are Deficient. .................... 19

3.      Ketchum Payments ....................................................... 20

a.      The Movants are Not Section-550 Beneficiaries of
the Ketchum Transfer. ...................................... 20

b.      The Trustee's Conclusory Allegations Concerning
Ketchum Cannot Save Counts III and IV as
Directed to the Ketchum Payments. ................................ 21

C.      Count V Must Be Dismissed for Failure to State a Claim Upon
Which Relief Can Be Granted. ............................................................. 22

D.      Count VI Must Be Dismissed For Failure to State a Claim upon
Which Relief Can Be Granted Against the Movants Because The
Movants are Not Beneficiaries and the Payments are Not
Avoidable in the First Instance. ................................................................. 23

E.      Counts VII and VIII Must Be Dismissed for Failure to State a
Claim Upon Which Relief Can Be Granted Because There is No
Contract and No Contract Damages. .......................................................... 27

F.      Count IX Must Be Dismissed For Failure to State a Claim Upon
Which Relief Can Be Granted Because TMST Is Not a Party to the
Alleged Contract. ...................................................................................... 31

G.      Count X (applying only to Goldstone) Must Be Dismissed For
Failure to State a Claim Upon Which Relief Can Be Granted
Under Maryland Law Establishing a Presumption of Good Faith. ........... 33

H.      Count XI Must Be Dismissed Because No Claim for Breach of
Duty of Loyalty Exists Under Applicable Law. ........................................ 37

I.      Count XII Must Be Dismissed for Failure to State a Claim Upon
Which Relief Can Be Granted Against the Movants Because There
Has Been No Enrichment and the Trustee is Not Entitled to His
Sunk Costs. ............................................................................................... 38

J.      Count XIII Must Be Dismissed For Failure to State a Claim Upon
Which Relief Can Be Granted Against the Movants Because Civil
Conspiracy is Not a Valid Cause of Action Under Applicable State
Law. .......................................................................................................... 41

III.    Conclusion ............................................................................................................ 44

ii

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Am. Contractors Indem. Co. v. United States*,
  81 Fed. Cl. 682 (2008) ...............................................................................................28

*Asafo-Adjei v. First Sav. Mortg. Corp*,
  No. RWT 09cv2184, 2010 WL 730365 (D. Md. Feb. 25, 2010)............................................42

*Ashcroft v. Iqbal*,
  __ U.S. __, 129 S.Ct. 1937 (2009)...............................................................................2, 5, 23

*Begier v. Internal Revenue Service*,
  496 U.S. 53 (1990)....................................................................................................7

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)..............................................................................................2, 5, 23

*Biktasheva v. Red Square Sports, Inc.*,
  366 F. Supp. 2d 289 (D. Md. 2005) ...............................................................................6

*Billsie v. Brooksbank*,
  525 F.Supp.2d 1290 (D.N.M. 2007) ..............................................................................38

*Braun v. Maynard*,
  2010 WL 1375172 (D.Md. March 31, 2010).......................................................................28

*Carnegie Int'l. Corp. v. Grant Thornton*,
  24-C-00-002639, 2005 WL 851064 at *26 (Md. Cir. Ct. Apr. 6, 2005) ................................37

*Cencom Cable Income Partners II, LP v. Wood*,
  752 A.2d 1175 (Del. Ch. Ct. 1999).................................................................................27

*Chisholm v. Hyattstown Fire*,
  115 Md. App. 58 (1997) ..............................................................................................34

*DDH Aviation, LLC v. Holly*,
  No.Civ.A.3:03-CV-2598-R, 2004 WL 576061 (N.D. Tex. Mar. 22, 2004) ...........................26

*Drews v. Denver Recycling Co.*,
  727 P.2d 1121 (Colo. App. 1986) ..................................................................................30

*Estate of White v. R.J. Reynolds Tobacco Co.*,
  109 F. Supp.2d 424 (D. Md. 2000) ................................................................................43

*Faller III v. Faller Jr.*
  2010 WL 1141202 (D. Md. March 22, 2010)...................................................................37, 43

*Francis v. Giacomelli*,
  588 F.3d 186 (4th Cir. 2009) .....................................................................................4, 5, 23

*Full Value Partners, L.P. v. Neuberger Berman Real Estate Income Fund, Inc.*,
  2005 U.S. Dist. LEXIS 6581 (D. Md. Apr. 18, 2005) ...........................................................33

*Garcia v. Middle Rio Grande Conservancy*,
  121 N.M. 728 (1996) ............................................................................................................28

*Haley v. Corcoran*,
  659 F. Supp. 2d 714 (D. Md. 2009) .......................................................................................5

*Harrison v. Westinghouse Savannah River Co.*,
  176 F.3d 776 (4th Cir. 1999) .................................................................................................5

*Haskell v. Time, Inc.*,
  857 F.Supp. 1392 (E.D. Cal. 1994)......................................................................................26

*Hydro Conduit Corp. v. Kemble*,
  110 N.M. 173, 793 P.2d 855 (N.M. 1990)...........................................................................40

*In re Am. Honda Motor Co., Inc. Dealerships Relations Lit.*,
  941 F.Supp. 528 (D. Md. 1996) .....................................................................................26, 40

*In re Caremerica*,
  409 B.R. 759, 766 (Bankr. D.N.C. 2009) ............................................................................10

*In re Intern. Mngm't Assoc.*,
  399 F.3d 1288 (11th Cir. 2005) ...........................................................................................13

*In re Matheny*,
  138 B.R. 541 (Bankr. S.D. Ohio 1992).................................................................................22

*In re Meredith*,
  527 F.3d 372 (4th Cir. 2008) ...................................................................................... passim

*In re Rood*,
  2010 WL 1068088 (D. Md. Mar. 17, 2010)..........................................................................42

*In re Southeast Hotel Props. Ltd. P'ship*,
  99 F.3d 151 (4th Cir. 1996) ...........................................................................................24, 25

*In re Stephen S. Meredith, CPA, P.C.*,
  367 B.R. 558 (E.D.Va. 2007)...............................................................................................12

*In re Verestar, Inc.*,
  343 B.R. 444 (S.D.N.Y. 2006)..................................................................................26

*Jaramillo v. Providence Washington Ins. Co.*,
  117 N.M. 337, 871 P.2d 1343 (1994) .......................................................................32

*Kipperman v. Onex Corp.*,
  2006 U.S. Dist. LEXIS 96944 (N.D. Ga. Sept. 15, 2006) ......................................10

*Konover Property Trust, Inc. v. WHE Assoc., Inc.*,
  142 Md. App. 476 (Md. Ct. Spec. App. 2002) ........................................................28

*Kyte v. College of Southern Maryland*,
  No. DKC 2003-2558, 2005 WL 396306 (D. Md. Feb. 18, 2005) ...........................23

*Learning Works, Inc. v. The Learning Annex, Inc.*,
  830 F.2d 541 (4th Cir. 1987) ...............................................................................6, 35

*McReady v. O'Malley*,
  2010 U.S. Dist. LEXIS 20350 (D. Md. Mar. 8, 2010)............................................22

*MFI-DPLH, LLC v. Ingram*,
  2010 WL 311636, at *6 (D. Md. Jan. 20, 2010) .....................................................37

*Miller v. Auto. Club Of New Mexico, Inc.*,
  420 F.3d 1098 (10th Cir. 2005) ...............................................................................30

*Murdaugh Volkswagen, Inc. v. First Nat. Bank of South Carolina*,
  639 F.2d 1073 (4th Cir.1981) ..................................................................................42

*Nat'l Constructors Ass'n v. Nat'l Elec. Contractors Ass'n, Inc.*,
  498 F.Supp. 510 (D.Md.1980)..................................................................................42

*Nemet Chevrolet. Ltd. v. Consumeraffairs.com, Inc.*,
  591 F.3d 250 (4th Cir. 2009) .....................................................................................8

*O'Connor v. R.F. Lafferty & Co., Inc.*,
  965 F.2d 893 (10th Cir. 1992) ..................................................................................32

*Ontiveros Insulation Co., Inc. v. Sanchez*,
  129 N.M. 200, 3 P.3d 695 (N.M. Ct. App. 2000) ..............................................38, 40

*Patterson v. Patterson*,
  03-C-05-005429, 2006 WL 990998 (Md. Cir. Ct. Jan. 31, 2006) ...........................34

*Perkins v. State Farm Ins. Co.*,
  589 F. Supp. 2d 559 (M.D. Pa. 2008) ........................................................................6

*Raceredi Motorsports, LLC v. Dart Mach., Ltd.*,
    640 F.Supp. 2d 660 (D. Md. 2009) ...........................................................26, 28, 38

*Reyna Fin. Corp. v. Art Janpol Volkswagen, Inc.*,
    110 N.M. 796, 800 P.2d 731 (N.M. 1990) ..............................................................32

*Ruesegger v. Bd. of Regents of Western New Mexico Univ.*,
    141 N.M. 306, 154 P.3d 681 (N.M. Ct. App. 2006) ..............................................29

*Rupp v. Markgraf*,
    95 F.3d 936 (10th Cir. 1996) ..................................................................................13

*Russo v. Ballard Medical Products*,
    550 F.2d 1004 (10th Cir. 2008) ..............................................................................39

*Salazar v. Citadel Comm. Corp.*,
    135 N.M. 447, 90 P.3d 466 (2004) ..........................................................................29

*Sauerwein v. International Brotherhood of Locomotive Engineers*,
    MJG-02-27552005, WL 1383169 (D. Md. May 10, 2005) ....................................37

*Seeds v. Lucero*,
    137 N.M. 589, 113 P.3d 859 (N.M. Ct. App. 2005) ..............................................41

*Shull v. N.M. Potash Corp.*,
    111 N.M. 132, 802 P.2d 641 (1990) ........................................................................30

*Sonntag v. Shaw*,
    130 N.M. 238, 22 P.3d 1188 (2001) ........................................................................31

*Spagnola v. Chubb Corp.*,
    264 F.R.D. 76 (S.D.N.Y. 2010) ..............................................................................26

*Stieber v. Journal Publ'g Co.*,
    120 N.M. 270, 901 P.2d 1321 (1987) ......................................................................29

*Stuler v. United States*,
    570 F.3d 1373 (Fed. Cir. 2009)................................................................................28

*Tom Growney Equip., Inc. v. Ansley*,
    119 N.M. 110, 888 P.2d 992 (N.M. Ct. App. 1995) ..............................................40

*Tonkovich v. Kansas Bd. Of Regents*,
    159 F.3d 504 (10th Cir. 1998) ................................................................................41

*Trevino v. MersCorp, Inc.*,
    583 F.Supp.2d 521 (D. Del. 2008)...........................................................................27

*U.S. ex rel. Elms v. Accenture LLP*,
   341 Fed. Appx. 869, No. 07-1361, 2009 WL 2189795 (4th Cir. July 22, 2009)................6, 11

*Wallace v. Mercantile County Bank*,
   514 F.Supp.2d 776 (D. Md. 2007) .........................................................................41

*Waller v. Butkovich*,
   584 F.Supp. 909 (M.D.N.C.1984) .........................................................................42

*Willis v. E.I. Du Pont De Nemours & Co.*,
   171 F.2d 51 (10th Cir. 1948), 76 F. Supp. 1010 (E.D. Okla. 1948) .......................................32

*Woodard v. Fidelity Nat. Title Ins. Co.*,
   No. 06-1170, 2008 WL 5737364 .........................................................................40

*Zarr v. Washington Tru Solutions, LLC*,
   146 N.M. 274, 208 P.3d 919 (N.M. Ct. App. 2009) .............................................................28

## STATUTES

11 U.S.C. § 363.........................................................................................22, 23

11 U.S.C. 542(a) ...........................................................................................22

11 U.S.C. § 502 .............................................................................................7

11 U.S.C. § 541(a) ..........................................................................................7

11 U.S.C. § 544 ...............................................................................6, 7, 10, 16

11 U.S.C. § 544(b) ..........................................................................................7

11 U.S.C. § 548(a) ......................................................................................7, 10

11 U.S.C. § 549 .............................................................................................25

11 U.S.C. §  549(a)(2) .....................................................................................24

11 U.S.C. § 550.................................................................................... passim

11 U.S.C. § 550(a) .....................................................................................12, 25

M.C.A. § 2-405.1(a) ........................................................................................34

M.C.A. § 2-405.1 ....................................................................................33, 34, 37

M.C.A. § 2-405.1(a)(3).....................................................................................34

M.C.A. § 2-405.1(b)(i)-(ii) ................................................................................35

M.C.A. § 2-405.1(e).............................................................................................34

**OTHER AUTHORITIES**

Fed. R. Bankr. P. 7012 ..........................................................................................4

Fed. R. Civ. P. 8 .............................................................................................4, 42

Fed. R. Civ. P. 8(a)(3) .........................................................................................31

Fed. R. Civ. P. 9 ....................................................................................................4

Fed. R. Civ. P. 9(b) .........................................................................5, 6, 10, 35

Fed. R. Civ. P. 12(b) ..............................................................................................4

Fed. R. Civ. P. 12(b)(6).....................................................................................2, 4

Fed. R. Civ. P. 12(e)............................................................................................23

Fed. R. Civ. P. 41(d) ...........................................................................................23

Sarbanes-Oxley Act of 2002................................................................................29

13 Williston on Contracts §  37:8 (4th ed.).........................................................32

## INTRODUCTION

The Complaint in this case contains thirteen counts against the Movants. Those counts continue a one-sided and highly distorted view of the facts first articulated by the U.S. Trustee seeking appointment of a Chapter 11 Trustee on the ground that TMST's Board of Directors failed to properly administer the estate, and by TMST's Board of Directors, who resisted such claims by filing an adversary action against the Movants that was so legally flawed that it was later dismissed by the Chapter 11 Trustee (the "Trustee") after his appointment by this Court.

The instant Complaint seeks to plug gaping holes and correct misstatements in the now dismissed adversary action. But this latest effort is no more sustainable than the version the Trustee was forced to dismiss. The allegations fall into four distinct categories of legally flawed and cumulative claims: (l) avoidance and turnover claims, (2) breach of contract claims arising out of documents which either are not contracts, or are contracts under which TMST has no enforceable rights, (3) breach of fiduciary duty (or fraud) claims arising out of the Movants' positions as officers of TMST, including an alleged conspiracy to breach fiduciary duty, and (4) an unjust enrichment claim.

The Movants, of course, have no right to present evidence at this juncture in seeking dismissal of the Complaint, and are forced by the Federal Rules of Civil Procedure to accept the allegations of the complaint as true solely for purposes of the Court's initial review of the allegations under Rule 12(b)(6). Notwithstanding those rules, however, this Court should conduct a searching inquiry of the Complaint in order to determine whether there are adequate factual allegations pled by the Trustee to sustain the Complaint.

Indeed, there are important reasons for insisting that the Trustee do more than simply "mouth" the elements of a cause of action, but rather strictly adhere to pleading requirements at this stage by showing that there is a factual basis that would support a valid claim. First, the

1

Supreme Court on at least two recent occasions has emphasized the importance of setting forth that factual basis in a Complaint. See *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1950 (2009). Second, even a cursory review of the Complaint shows that it is based on allegations which are internally inconsistent and lack plausibility. At a bare minimum, *Twombly* and *Iqbal* require that these internal contradictions and inconsistencies be explained in sufficient detail so that a court can discharge its functions under Rule 12(b)(6).

To take one example, and as explained in more detail below, the entire Complaint is based on conduct that essentially revolves around a flawed factual premise, namely that the Movants should be required to pay damages for pursuing a business idea which TMST itself had abandoned. In fact, the Complaint evidently acknowledges this internal inconsistency. (*See* Compl. ¶ 112 ("several Board members agreed that the Debtors were no longer able to pursue" this idea).) It is even more difficult to accept the premise stated in the Complaint— that the Movants should be forced to pay damages for this abandoned idea— when the Trustee admits in the Complaint that TMST's own lawyers advised TMST that there was no prohibition against the Movants pursuing this abandoned business idea. (*See* Compl. ¶ 125 ("[TMST's lawyer] advised that, even if a corporate opportunity existed with respect to a business strategy …, directors and officers should not be liable to the Company for pursuing such for themselves if the Company is not able to undertake or pursue the strategy on its own."))

The flawed premise of the Complaint is even more troubling given the admissions that much of what was allegedly done in pursuit of these allegedly "improper" activities and for which damages are sought— such as paying bonuses to individuals responsible for allegedly pursuing this business idea, (*see* Compl. ¶ 154) —were done by TMAC, rather than by the

debtor, TMST.  (*See* Compl. ¶¶ 60-61.)  In the same vein, the Complaint is built upon the inherently contradictory notion that the Movants kept their activities secret from the Board of Directors while employing counsel to the Board, who the Complaint alleges was under a duty to disclose the Movants' activities to the directors, and while the Chairman of the TMST Board, Garrett Thornburg, was approving actions alleged in the Complaint to constitute a breach of fiduciary duty by the Movants.  (*See* Complaint ¶¶ 60-61 alleging that the Movants "sought approval from [Garrett] Thornburg for these payments".)

In addition to internal inconsistencies and contradictions, the Complaint is riddled with general allegations intended to mask the lack of specific allegations necessary to sustain a cause of action.  For instance, Count V claims that the Movants removed not only unnamed books and records, which are supposedly still in their possession, but also "intangible" assets that are the subject of the turnover action set forth in that Count.  Just as the Complaint fails to suggest how the Movants could "turn[]over" intangible property, it fails to indicate what, if anything, remains in the Movants' possession, and must be turned over to the Trustee.

To be sure, the allegations contained in the Complaint must be viewed as true for the purposes of the present motion.  That does not mean, however, that the Court should accept the leaps of logic, assumptions, and inadequate factual detail proffered in support of the lawsuit.  Once pleading standards articulated in *Twombly* and *Iqbal* are considered and applied to the Complaint, dismissal is appropriate.

For all of the reasons discussed more fully below, the Movants move to dismiss the Trustee's Complaint.

5091147

I.        **Standards**

A.        **Rule 12(b)(6) Imposes Strict Standards at the Pleading Stage.**[1]

A Rule 12(b)(6) motion tests the sufficiency of a complaint.  *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citing *Jordan v. Alternative Resources Corp.*, 458 F.3d 332, 338 (4th Cir. 2006)).  The Fourth Circuit has described in detail the applicable rules and the attendant requirements that must be met to avoid dismissal of complaints as legally insufficient.  "[T]he legal sufficiency of a complaint is measured by whether it meets the standards for a pleading stated in[,] [among other rules,] Rule 8 (providing general rules of pleading) [and] Rule 9 (providing rules for pleading special matters) …."  *Id*.  The purposes of the strict pleading standards include assuring that each defendant has adequate notice of the nature of the plaintiff's claims, providing criteria for defining trial issues, and to provide for early disposition of inappropriate complaints.  *Id*. (*citing* 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 1202, at 88 (3d ed. 2004)).  Early disposition is favored in part because of the high cost of litigation.  See *id*. at 193.

For these reasons and others, pleading requirements go well beyond notice pleading and require a good measure of factual support.

> [M]any … provisions impos[e] requirements that permit courts to evaluate a complaint for sufficiency early in the process.  Rule 8 itself requires a *showing* of entitlement to relief.  Rule 9 requires that allegations of fraud, mistake, time, place, and special damages be specific. Rule 11 requires that the pleading be signed and provides that the signature "certifies" (1) that the claims in the complaint are not asserted for collateral purposes; (2) that the claims asserted are "warranted"; and (3) that the factual contentions "have evidentiary support."

*Id*. at 192-193.  The strict and abundant pleading requirements thereby establish "that plaintiffs may proceed into the litigation process only when their complaints are justified by both law and

---

[1] Federal Rule of Civil Procedure 12(b) is made applicable by Federal Rule of Bankruptcy Procedure 7012.

fact." *Id.* at 193.  To justify a complaint, the plaintiff must do more than provide "labels," …

"conclusions, and a formulaic recitation of the elements of a cause of action."  *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. at 555.  "To discount such unadorned conclusory allegations, 'a

court considering a motion to dismiss can choose to begin by identifying pleadings that, because

they are no more than conclusions, are not entitled to the assumption of truth.'"  *Francis*, 588

F.3d at 193 (citing *Iqbal*, 129 S.Ct. at 1950).

In sum, these requirements demand much more than a statement of possibility.  The

plaintiff must "articulate facts, when accepted as true, that '*show*' that the plaintiff has stated a

claim entitling him to relief …."  *Id.*  (emphasis added).  Where "a context-specific" review of a

complaint reveals only the "possibility of misconduct," the complaint has not shown an

entitlement to relief and must be dismissed.  See *id.*

### B.    Counts I-IV, X and XI  Fail to  Meet Heightened Pleading Standards Under Federal Rule of Civil Procedure 9(b).

The Complaint contains at least six counts in which the word "fraud" (or "fraudulent") is

used but not pleaded with particularity.  Those counts are numbers I, II, III, IV, X, and XI.

Because they are not pleaded with particularity— as described below— they do not meet the

heightened pleading standards for fraud claims and must be dismissed.

Where a complaint "alleges fraud or when 'the gravamen of the claim is fraud even

though the theory supporting the claim is not technically termed fraud,' Rule 9(b) requires that

'the circumstances constituting fraud be stated with particularity.'"  *Haley v. Corcoran*, 659 F.

Supp. 2d 714, 720 (D. Md. 2009).  The failure to comply with Rule 9(b) pleading requirements is

"treated as a failure to state a claim under Rule 12(b)(6)."  *Harrison v. Westinghouse Savannah*

*River Co.*, 176 F.3d 776, 783 n.5 (4th Cir. 1999).

Rule 9(b) "is aimed at [preventing] fishing expeditions. 'The clear intent of [the rule] is to eliminate fraud actions in which all the facts are learned through discovery after the complaint is filed.'" *U.S. ex rel. Elms v. Accenture LLP*, 341 Fed. Appx. 869, 872, No. 07-1361, 2009 WL 2189795, at *2 (4th Cir. July 22, 2009) (dismissing fraud claim). To satisfy the Rule 9(b) pleading requirements, a party must "allege the time, place, and contents of the false representations, as well as the identity of the person making the representation and what he obtained thereby." *Id.* at 873; *see also Biktasheva v. Red Square Sports, Inc.,* 366 F. Supp. 2d 289, 295-96 (D. Md. 2005) (dismissing fraud claim for failing to plead with particularity "the time [and] place of the alleged fraud, [as well as] the specific identity of the alleged perpetrator.") Reliance is also an element of fraud under Maryland law, and under Rule 9(b) it too must be pleaded with particularity. *See Perkins v. State Farm Ins. Co.*, 589 F. Supp. 2d 559, 567-68 (M.D. Pa. 2008); *Learning Works, Inc. v. The Learning Annex, Inc.*, 830 F.2d 541, 545 (4th Cir. 1987) (dismissing fraud claim for failing to plead reliance with particularity).

Consequently, because Counts I-IV, X and XI are based on the notion that Movants engaged in fraud, those counts must meet the pleading requirements of Rule 9(b). Because they fail to meet those standards, dismissal is required.

## II.     The Complaint Fails To State A Claim, And Must Be Dismissed. [2]

### A.     Because Counts I and II Allege Transfers Involving TMAC, Rather Than Transfers To or For the Benefit of the Movants, Those Counts Fail to State a Claim Upon Which Relief Can Be Granted.

Counts I and II allege fraudulent transfers under sections 544 and 548 of the Bankruptcy Code (the "Code"). These counts, however, suffer from the same fatal flaw: because the

---

[2] Where the Complaint is cited or referenced, the Movants do not admit the truth of factual allegations contained in the Complaint but instead assume any well-pleaded allegations to be true only for purposes of this motion to dismiss, or otherwise cite the Complaint as indicative of the plaintiff's allegations.

allegedly fraudulent transfers complained of in Counts I and II were made by Thornburg

Mortgage Advisory Corporation ("TMAC"), they do not involve estate property and cannot be

avoided or recovered by the Trustee.[3]  As explained below, because neither of the counts in

question alleges that anything of value belonging to TMST was received by the Movants, these

counts are deficient and must be dismissed.

> **1.    Because No Property of the Debtor Went to the Movants, the Transactions Cannot Be Avoided Here.**

The Code sections at issue, sections 544 and 548, (Compl. ¶¶ 160, 168), provide for the

avoidance of transfers of bankruptcy-estate property, as opposed to non-estate property.  Section

544 allows for the avoidance of a "transfer of property *of the debtor* or any obligation incurred

*by the debtor* that is voidable by," among others, an unsecured creditor holding a claim allowable

under 11 U.S.C. § 502.  11 U.S.C. § 544(b) (emphasis added).  Similarly, section 548 allows for

the avoidance of a transfer "of an interest *of the debtor* in property…or any obligation incurred

*by the debtor*" within two years of the petition date.  11 U.S.C. § 548(a) (emphasis added).

While the Code does not define what is property "of the debtor," such property is deemed to be

the same here in the pre-petition context as the property falling within the scope of section 541 in

the post-petition context.  See *Begier v. Internal Revenue Service*, 496 U.S. 53, 58-59 (1990)

(property of the debtor "is best understood as that property that would have been part of the

estate had it not been transferred before the commencement of bankruptcy proceedings," and is

analogous to the § 541 definition of estate property).  As such, the debtor's property relevant to

sections 544 and 548 is that in which the debtor held a "legal or equitable" interest when it was

transferred.  *See* 11 U.S.C. § 541(a).

---

[3] The Counts relate to the same transfers, but invoke different avoidance provisions.

The property transferred here to the Movants belonged to TMAC, and certainly was not the debtor's property. The Complaint seeks to avoid allegedly "unauthorized bonus payments" to four defendants, including the Movants. (Compl. ¶ 154.) As plainly admitted in the Complaint, "TMAC [as opposed to TMST] still employed and paid all of the Debtors' employees at th[at] time," (Compl. ¶ 60), which explains why the payments in question were made by TMAC. Because the payments were from TMAC, the person responsible for handling payroll for TMAC "sought approval from [Garrett] Thornburg for these payments." (Compl. ¶¶ 60-61.) Having been authorized by Garrett Thornburg, the majority shareholder of TMAC and the Chairman of the TMST Board of Directors, (Compl. ¶ 26), TMAC made the payments on or about April 3, 2009. (Compl. ¶ 154.) In short, the payments were of TMAC's property and cannot be avoided by the TMST Trustee.

Apparently recognizing that the payments do not implicate TMST and the bankruptcy estate, the Trustee tries to fashion a claim based upon a second set of payments occurring almost two weeks later. That second set of payments described under Counts I and II relates to the April 15, 2009 "reimbursement … by TMST to TMAC" for the earlier transaction. (Compl. ¶ 154.) While this second transaction did involve TMST's property, it did not involve any transfer to the Movants. The only transfer was instead to TMAC. The second transaction does not somehow convert the first transaction into one involving TMST's property.

Ignoring the reality of two separate transactions, one involving the estate and the other not, the Trustee intentionally conflates the two by labeling them collectively (and incorrectly) as "the 'Unauthorized Payments.'" On a motion to dismiss, however, a court should not consider "unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet. Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citing *Wahi v. Charleston Area*

8

*Med. Ctr., Inc.*, 562 F.3d 599, 615 n. 26 (4th Cir. 2009); *Iqbal*, 129 S.Ct. at 1951-52). There can be no more unreasonable a conclusion than the one found in paragraph 154 of the Complaint, which claims that the TMAC-to-third-party payments *and* the TMST-to-TMAC payments, referred to as a "reimbursement" of those earlier payments, both involve the debtor's property. (Compl. ¶ 154.) This absurd allegation is only made in an attempt to bootstrap a claim where none exists. The Court should disregard it.

Based upon the allegations of the Complaint, it is improper for the Trustee to ignore the factual differences between these two sets of payments, treating them as one. *First*, the Trustee admits that the transactions were separate and made almost two weeks apart. (Compl. at ¶¶ 61-62.) *Second*, the only transfer of TMST's property went to TMAC, which is, for some unexplained and non-apparent reason, not a defendant in this action. *Third*, the respective transactions were made under entirely different management agreements. The first transaction was made under a standing "amended management agreement" between TMST and TMAC under which TMAC would be reimbursed by TMST "for documented 'Operating Expenses' … that TMAC 'reasonably incurred on its behalf in furtherance of its responsibilities' …." (Compl. ¶ 28.) After that, the TMST-to-TMAC (second) transaction was made under what the Trustee calls the Second Amended Management Agreement between TMST and TMAC. That "Second Amended Management Agreement" did not even exist when transaction number one took place; it was approved by the Board of Directors on April 8, 2009, after the first transaction occurred.[4] (Compl. ¶ 81.) The Second Amended Management Agreement provided for any TMST-to-

---

[4] It is worth noting that the Trustee complains that the Board of Directors mistakenly approved the Second Amended Management Agreement, but that mistake was allegedly because of a failure by TMST's counsel to advise it on April 8, 2009 of information relevant to so-called WARN Act payments, not a failure related in any way to the payments at issue in Counts I and II.

TMAC reimbursement on the 15th and 30th of each month, and the second transaction, between

TMST and TMAC, occurred on April 15, 2009.  (Compl. ¶¶ 29, 62, 154.)

> ### 2. Even Treating the Various Transactions As Involving TMST Property, the Trustee Still Has Failed to Plead Sufficient Facts to Avoid Any Transfer.

Even if the Court were to construe the Complaint as alleging that TMST, and not TMAC,

paid the bonuses to Movants (contrary to facts pled elsewhere in the Complaint), the Complaint

would still be defective.  The Trustee is required to allege facts showing that even if the transfer

involved property of TMST, the transfer was avoidable in the first instance.  Because the Trustee

has failed to sustain that burden, Counts I and II must be dismissed.

As the Supreme Court has held, the plaintiff must do more than provide "labels,"

"conclusions, and a formulaic recitation of the elements of a cause of action."  Yet, conclusory

and "formulaic recitations" make up all but two of the paragraphs in Count I.  (*See* Compl. ¶¶

155-160.)  The most specific allegation offered by the Trustee is that the transactions were

"unauthorized", despite admissions elsewhere that they were authorized by TMAC.  (*See* Compl.

¶¶ 59-62, 153-160.)  (*See also* Compl. ¶ 154 (calling the payments "unauthorized").)

But even if the payments were "unauthorized," or, alternatively, authorization was

ineffective for some reason (nowhere stated in the Complaint), the lack of valid authorization

would not lead to avoidance under either 544 or 548.  *See* 11 U.S.C. §§ 544, 548 (describing

grounds for avoidance, which grounds do not include lack of authorization).  For example, there

is no support for the contention in Counts I and II that the transfers were made with the intention

to hinder or delay creditors.  Moreover, because this is, at its essence, an allegation of actual

fraud, the heightened pleading standards of Rule 9(b) apply.  *See*, *e.g.*, *Kipperman v. Onex Corp.*,

2006 U.S. Dist. LEXIS 96944, at *51 (N.D. Ga. Sept. 15, 2006) (claim under 11 U.S.C. § 548(a)

dismissed for failure to meet heightened pleading standards of Rule 9(b)); *accord In re*

*Caremerica*, *Inc.*, 409 B.R. 759, 766 (Bankr. D.N.C. 2009).  Under the heightened pleading standards, the Trustee must "allege the time, place, and contents of the false representations, as well as the identity of the person making the representation and what he obtained thereby."  *U.S. ex rel. Elms*, 341 Fed. Appx. at 872.

The lack of any specific allegations sufficient to satisfy Rule 9(b) is all the more troublesome given the admission by the Trustee that the Chairman of TMST's Board, Garrett Thornburg, approved the bonus payments.  (*See* Compl. ¶¶ 60-61).  Nowhere does the Complaint allege any misrepresentation by the Movants to Thornburg or to any other person in connection with such authorization.  Indeed, as to Simmons, there is no claim that he made any representations— false or otherwise— in connection with the payment of the bonuses.

The Complaint similarly lacks any specificity as to any alleged misrepresentation by Goldstone.  The Trustee simply refers to discussions between Goldstone and TMST's counsel and TMST's Board as to whether the amended management agreement approved by the TMST Board was intended "to eliminate profit for TMAC 'for the benefit of creditors.'"  (Compl. ¶ 78.)  There is no allegation that such representations were false, as the Trustee does not even allege that the amended management agreement failed to eliminate profit for TMAC for the benefit of creditors.  The Trustee also fails to allege what the Movants gained by any alleged misrepresentation. Without any specifics as to the alleged misrepresentation, the claim fails to meet Rule 9(b) standards and Counts I and II must be dismissed.

Similarly, there is no support for the contention that TMST did not receive reasonably equivalent value for the payments, explaining why the Trustee has filed no claim against TMAC as a result of the payments or the amendment of the management agreement.  The TMST-to-TMAC payment, the only transfer of TMST's property, was made under a Board-approved

management agreement, described *supra*, at a time when TMAC managed all of TMST's operations.  (Compl. ¶¶ 24-25.)  There is no allegation that TMAC was engaging in mismanagement that would support any conclusion that any payment made to TMAC was not for reasonably equivalent value.

### 3. The Trustee Cannot Hold the Movants Liable for Payments To and For the Benefit of TMAC.

Assuming, *arguendo*, the Trustee can somehow first avoid the payments made by TMST to TMAC, he nonetheless cannot hold the Movants liable for those payments.  Seemingly recognizing that the only TMST property involved here was in the payment from TMST to TMAC and not to the Movants, the Trustee seeks to impose liability upon the Movants under 11 U.S.C. § 550.  As an initial matter, if the Trustee does not first avoid a transfer, the recovery provisions of § 550 do not apply; Section 550 applies only "to the extent that a transfer is avoided…."  *See* 11 U.S.C. § 550(a).  Additionally, section-550 liability only attaches to a transferee or "entity for whose benefit [a] transfer was made."  *Id.*

The Movants are neither transferees nor beneficiaries of the payment made from TMST to TMAC, the only transfer of TMST property identified in Counts I and II.  (*See* Compl. ¶ 154.) Because the Movants are not even alleged to be transferees, the Complaint falls back on the notion that suit can be based on the theory that the Movants are beneficiaries of the payment made by TMST to TMAC.  (Compl. ¶ 159.)  But that allegation is both unsupported and unsupportable.[5]

---

[5] There is no explanation provided as to why the Trustee has not sought the TMST property from the entity to which it was transferred, which is TMAC.  The chosen approach to attempt to impose liability upon the Movants is not only contrary to law, but also against "a Congressional preference that the property itself be returned to the estate."  *In re Stephen S. Meredith, CPA, P.C.*, 367 B.R. 558, 563 (E.D. Va. 2007) (citing *In re Morris Commc'ns NC Inc.*, 75 B.R. 619, 629 (Bankr. W.D.N.C. 1987), rev'd on other grounds, 914 F.2d 458 (4th Cir. 1990)).

As a matter of law, the Movants are not beneficiaries under Code section 550.  In simple terms, a beneficiary in this context is "someone who receives the benefit but not the money."  *In re Meredith*, 527 F.3d 372, 375 (4th Cir. 2008) (citing *In re Columbia Data Prods., Inc.*, 892 F.2d 26, 29 (4th Cir. 1989), quoting *Bonded Fin. Servs., Inc. v. European Am Bank*, 838 F.2d 890, 895 (7th Cir. 1988)).  Typically, this beneficiary is "a debtor of the transferee or the guarantor of a debt owed by the bankrupt party to the transferee."  *Id*.; *In re Intern. Mngm't Assoc.*, 399 F.3d 1288, 1292-1293 (11th Cir. 2005) ("The paradigm case of a benefit under § 550(a) is the benefit to a guarantor by the payment of the underlying debt of the debtor") (citing *In re Coggin*, 30 F.3d 1443, 1453 (11th Cir. 1994); 5 Collier on Bankruptcy ¶ 550.02[4] at 550-17 (15th ed. 1984); *In re Finley, Kumble, et al.*, 130 F.3d 52, 57 (2d Cir. 1997); *In re Bonded Fin. Svcs., Inc.*, 838 F.2d 890, 895 (7th Cir. 1988)).

While a beneficiary need not fit neatly into the paradigm example of a guarantor of the debtor's debt, "a person must actually receive a benefit from the transfer in order to be an 'entity for whose benefit' the transfer was made."  *In re Meredith*, 527 F.3d at 376.  "The example of a debt and a guarantor affords some insight into the intention of Congress in enacting § 550(a)." *In re Intern. Mngm't Assoc.*, 399 F.3d at 1293.  Congress intended to balance the equities in the context of a challenged transfer, and the Trustee can go no further to impose his own view.  *Rupp v. Markgraf*, 95 F.3d 936, 944 (10th Cir. 1996) ("In most, if not all, bankruptcy cases someone is going to be injured … [, but] Congress has already balanced the equitable considerations under Section(s) 550 by distinguishing between initial transferees, who are strictly liable, and [others] … who are not strictly liable.").  As Congress intended, TMAC may be deemed strictly liable for repayment of the funds paid to it by TMST, but the Movants may not be.

5091147

Applying the law to the facts alleged in the Complaint, the Movants cannot be deemed a beneficiary under Code section 550 without an allegation that they received a benefit from the payment made by TMST to TMAC. The only allegation is that the Second Amended Management Agreement, under which the payment to TMAC was made, was amended to "insure (sic) that TMAC would fund" a "secret … plan." (Compl. ¶ 78.) Reading the Complaint extraordinarily broadly, the allegation is, at most, as follows: (1) the Movants received bonus payments from TMAC on April 3, 2009 after they were approved by TMST Chairman Garrett Thornburg (Compl. ¶¶ 61, 154); (2) after the bonus was paid by TMAC, the TMST Board of Directors were asked to approve the Second Amended Management agreement in order to convince TMAC to fund an allegedly secret new business venture (Compl. ¶ 78, 81); and (3) that potential "insur[ing]" of TMAC funding was sufficient to confer beneficiary status upon the Movants, as shareholders of another company (SAF Financial, Inc.) ("SAF"), for the subsequent payment made by TMST to TMAC.

This set of logical leaps does not come close to supporting Counts I and II, and equally does not transform the Movants into beneficiaries for purposes of section 550. The Complaint fails to explain how reimbursing TMAC for bonuses previously paid to the Movants would make it more likely that TMAC would fund SAF.

Moreover, even the most liberal reading of the Complaint leaves an allegation that is, at most, that the Movants *intended* when they obtained the bonus payments that there would be a benefit at some time in the future. But, the mere intent to confer a benefit is not enough, particularly when that benefit would have been conferred only upon TMAC, and only theoretically and by inference, upon SAF which would have theoretically received the funding under this convoluted theory. See *In re Meredith*, 527 F.3d at 376-377 (holding that the

subjective intent to benefit oneself or a closely related person does not support an allegation of beneficiary status). Rather, the determinative inquiry is whether the Movants *actually* received a benefit from the TMST-to-TMAC payment. *Id*. at 376 (analyzing cases interpreting section 550 and finding "[w]hat is apparent from all of these examples is that a person *must actually receive a benefit* from the transfer in order to be an 'entity for whose benefit the transfer was made.'"). There is simply no allegation to suggest that they did. In fact, there is no allegation that TMAC actually agreed to fund SAF, the purported goal of the reimbursements, or in any other way accommodated the Movants by virtue of the reimbursements. As such, the Movants cannot be beneficiaries under section 550.

This principle has been extended even to those persons more directly linked to a transfer than are the Movants. Even where the alleged beneficiary actually participated in a fraud (which the Movants most certainly did not), he cannot be held liable under section 550 if he did not receive an actual benefit from a related fraudulent transfer. This principle is so applied because the recovery sought is "a form of disgorgement" under which "no recovery can be had from parties who participated in a fraudulent transfer but did not benefit from it." *In re Meredith*, 527 F.3d at 376 n.5 (rejecting any other interpretation of the law and citing *In re McCook Metals, L.L.C.,* 319 B.R. 570, 590 (Bankr. N.D. Ill. 2005)).

There are no facts alleged in the Complaint that pull the Trustee's section-550-beneficiary theory above, or even near, speculative level. As such, Counts I and II must be dismissed.

15

**B.    Counts III and IV Must Be Dismissed for Failure to State a Claim Upon Which Relief Can Be Granted Against the Movants Because These Transactions Are Not Avoidable or Otherwise Recoverable From the Movants.**

Counts III and IV involve three payments for which the Trustee alleges the Movants are liable under Code sections 544, 548, and 550.[6]  These three separate payments were made by either TMST or TMAC to the following vendors:  (1) Big Tree Inc. d/b/a 3t Systems ("Big Tree"); (2) SS&C Technologies Inc. ("SS&C"); and (3) Ketchum.  (Compl. ¶ 170.)

As a matter of law, the Movants are not liable for any of these payments, which are addressed separately below.  As a preliminary matter, one similarity between each of these vendor payments is that each may be recovered *from the transferee-vendors* if the transfers actually are recoverable under sections 544 or 548.  The failure of the Trustee to seek recovery from the actual transferees, who clearly and directly benefited from the payments, clearly undermines any notion that a cause of action exists under section 544 or 548.

**1.    SS&C Transfer**

Allegations relating to the SS&C payments suffer from the same flaws as those relating to the bonus payments.

**a.    The Payments From TMAC to SS&C Were Not of Property of the Estate.**

*First*, the payments made to SS&C were made by TMAC and not by TMST.  The Trustee alleges in the Complaint that the relevant payments to SS&C were actually two distinct payments made by TMAC, and not by TMST.  (Compl.  ¶¶ 91, 170.)  As such, it is impossible for the conclusory allegation in the Complaint to be true that these same "payments to … SS&C … constitute transfers of an interest in property of TMST."  (Compl. ¶ 170.)  There is no allegation

---

[6] As with Count II, Count IV contains no new factual allegations but instead merely recites the elements of a claim under 11 U.S.C. § 544.

16

here that TMST had any interest whatsoever in TMAC's funds.  As such, this allegation is not well-pleaded as a matter of law.

> **b.**      **Under Code Section 550, The Movants are Not Beneficiaries of the TMST-to-TMAC Payment.**

*Second*, there is no showing that the Movants were beneficiaries of the payments.  The Trustee again attempts to overcome the non-TMST-property problem by making the conclusory allegation that the TMST-to-TMAC payment relating to SS&C was "to or for the respective benefit of Messrs. Goldstone, Simmons and SAF (sic)."  (Compl. ¶ 175.)  This allegation is wrong as a matter of law for the same reasons described *supra*:  the Movants are not beneficiaries because there is no allegation or showing that they actually received benefits from the payment.

In fact, separate from the conclusory allegation, the Trustee actually asserts that SAF, and not even Movants, was the intended beneficiary.  The Complaint states that the paid vendors, including SS&C, were those "viewed as necessary for NEWCO's success."  (Compl. ¶ 89.)  NEWCO is the Trustee's synonym for SAF.  (Compl. ¶ 106.)  Here again, reading the Complaint as broadly as possible— even if inappropriately so— the allegation is that TMAC paid SS&C so that NEWCO would obtain a benefit that Goldstone and Simmons wanted SAF to obtain.  (*See* Compl. ¶ 91.)  The Complaint fails to explain how NEWCO would benefit from paying this vendor for past services or software.  Nor does this allegation show any real benefit to the Movants (or to SAF for that matter) and does not rise above the speculative level.[7]

---

[7] To the extent the Trustee relies on his allegation that SAF, Goldstone, and Simmons are alter egos (as alleged at Compl. ¶ 117), there is not an ounce of factual support for that allegation.  There are many factors required to support an alter-ego claim, and not one has even been alleged in the Complaint.  See *infra* at pp. 25-26 for a discussion of why the alter-ego theories of liability in the Complaint fail as a matter of law.

      **c.**    **The Trustee's Conclusory Allegations Concerning SS&C Cannot Save Counts III and IV as Directed to the SS&C Payments.**

As he did in Counts I and II, the Trustee improperly conflates in Counts III and IV a TMAC payment and a subsequent TMST reimbursement of TMAC into a single subset of "Vendor Payments." (Compl. ¶ 170.) No matter how the Trustee chooses to label these separate transactions, he cannot allege facts sufficient to refute the basic fact that TMST received reasonably equivalent value for TMAC's and SS&C's goods and services. The Trustee admits in the Complaint that TMST partially "but never fully implemented" the SS&C-licensed computer software, and paid SS&C for April 2009 services. (Compl. ¶ 91.) As described earlier, TMST was under contract to reimburse TMAC for operating expenses. *See supra* at 9-10. Without some factually based allegation that TMAC or SS&C did not earn and were not contractually entitled to their respective payments, there is no basis for the contrary conclusion the Court is asked to draw, which, again, does not rise above the speculative level.

      **2.**    **Big-Tree Transfer**

      **a.**    **The Movants are Not Section-550 Beneficiaries of the Big-Tree Transfer.**

Here again, the Movants are neither the transferees nor beneficiaries of the vendor payment. Clearly, the primary beneficiary of the payment was Big Tree, who was paid for its software. The secondary beneficiary here, beyond Big Tree as the primary beneficiary, is TMST's co-debtor, Thornburg Mortgage Home Loans Inc. ("TMHL," n/k/a TMST Home Loans, Inc. (Compl. at p. 1)). According to the Complaint, at some time before the bankruptcy, TMST entered into an agreement with Big Tree (a/k/a 3t) by which TMHL would pay a licensing and support fee for Mortgage Cadence. (Compl. ¶ 90.) In return, TMHL or TMST "acqui[red] … extended licenses" from Big Tree. (*Id.*) The Trustee goes on to argue that there is a third-level

beneficiary: NEWCO.  (*Id.*)  The Trustee does not explain how the extended licenses given to TMHL or TMST could possibly provide NEWCO with some benefit.  The Trustee's naked allegation, made without supporting facts, that the payment was made so that "Mortgage Cadence would be available for [NEWCO's] use" (*Id.*), does not explain how SAF could use licenses given to TMHL or TMST.

Even more troubling is the fact that the Movants are, at best, fourth-level beneficiaries. Missing, however, is an explanation as to how this fourth level of benefit would be derived through NEWCO -- which inexplicably is to derive a benefit through TMHL/TMST, which derives its benefit from a Big-Tree license extension.  This takes speculation in a Complaint to a new level, and can only be met with a dismissal of Counts III and IV.

### b. The Trustee's Conclusory Allegations Concerning Big-Tree in Counts III and IV are Deficient.

The Trustee again makes naked allegations relating to the Big Tree payments, simply reciting the elements of the statutes by which he seeks avoidance.  And, again, the factual allegations in the Complaint are either absent or refute the conclusory allegations.

For example, TMST is alleged to have actually received reasonably equivalent value for the payment, in contradiction to the conclusory allegation contained in paragraphs 172 and 181 of the Complaint.  As described, *supra*, TMHL or TMST actually received an extended license of Big Tree's product.  (Compl. ¶ 90.)  There is no allegation that the licenses went to NEWCO for its use.  (*Id.*)  The Trustee's allegation is simply that TMHL had no present intention to use the product it purchased (Complaint at ¶ 90), which obviously fails to address whether TMST received value.  The Complaint is clear that TMST and TMHL each conducted operations as a REIT, (Compl. ¶¶ 19-20), and there is no showing that TMST did not use or voluntarily extend the Big Tree licenses.  Moreover, there is no allegation that TMST's payment was not authorized

by the TMST Board of Directors, or that the Board was otherwise not fully supportive of the license extension.

### 3. Ketchum Payments

#### a. The Movants are Not Section-550 Beneficiaries of the Ketchum Transfer.

This is another instance of the Trustee alleging that the Movants are some sort of pass-through beneficiaries for other allegedly direct beneficiaries. As before, the allegations do not rise above the speculative level. Moreover, the conclusory allegation that Code section 550 applies against the Movants is actually refuted by the other allegations in the Complaint.

Here, the allegation is that Ketchum is an "investor relation (sic) and marketing firm" with whom TMST "had a long-standing relationship." (Compl. ¶ 92.) During this long-standing relationship and "[i]n the ordinary course, TMST paid Ketchum a quarterly retainer of $150,000.00, plus out-of-pocket expenses." (*Id*.) The first quarter invoice was sent by Ketchum on January 5, 2009 and was paid by TMST in February 2009, and the Trustee does not take issue with that payment. (Compl. ¶ 92.) The second quarter invoice was sent by Ketchum on March 13, 2009, and was paid by TMST on March 16, 2009. (Compl. ¶ 93.)

There is no explanation as to why this March payment is different than the other payments made in the ordinary course of the long-standing relationship between TMST and Ketchum. Notwithstanding this fact, the Trustee demands repayment from the Movants, while failing to complain that the payment to Ketchum gives rise to any relief whatsoever from Ketchum itself. There is no allegation that the retainer was not due or that the invoice should not have been paid. There is no allegation that the Board of Directors of TMST terminated the long-standing relationship TMST had with Ketchum.

20

Instead, the Complaint proceeds on the unsupportable conclusory allegation that this payment was similarly for the benefit of NEWCO, which allegedly pleased the Movants. Specifically, the allegation is that the Movants had "targeted Ketchum" as a "critical vendor for NEWCO," and then TMST paid the invoice upon Simmons's uncontradicted approval, (Compl. ¶¶ 92, 93), without explaining how the Movants (or even NEWCO) benefited from TMST paying its bill to Ketchum.

In sum, the Trustee is asking this Court to impose liability on the Movants simply because of their desire to have NEWCO use Ketchum. There is no appropriate reading of section 550 that imposes such liability without any factual showing how, if at all, the Movants were actually benefited by the Ketchum payment.

> **b.      The Trustee's Conclusory Allegations Concerning Ketchum Cannot Save Counts III and IV as Directed to the Ketchum Payments.**

Not only is there no showing how the Movants were benefited by the Ketchum payments, the Complaint fails to satisfy the other elements of the statutes by alleging any factual basis for the claims. For example, on the one hand, the Trustee alleges that there was no reasonably equivalent value conferred by payment to Ketchum. (Compl. ¶¶ 172, 181.) On the other hand, the Trustee admits that Ketchum and TMST had a "long-standing relationship" and TMST paid Ketchum a quarterly retainer "in the ordinary course." (Compl. ¶ 92.) These quarterly retainers, according to the Trustee, were paid in the beginning of each quarter to cover the following three months. (*Id.*) By these admissions, it is clear that Ketchum's availability had long been and continued to be sufficient value to justify the payments. Given these admissions, the conclusory allegation gains no support from the fact that TMST ended up receiving little value in the second quarter after paying a retainer and then heading towards bankruptcy. The fact is that the conclusory allegation is at odds with the long-standing relationship and routine payments that

21

had conferred enough value to keep the relationship going and then slowed in the pre-bankruptcy

quarter.

### C.    Count V Must Be Dismissed for Failure to State a Claim Upon Which Relief Can Be Granted. [8]

Count V demands that the Movants turn over a laundry list of "tangible" and "intangible"

property, failing to give even the slightest hint as to what tangible books, records or decks are in

the Movants' possession, and why they belong to TMST. As to the "intangible" property, it is

even more difficult to discern what the Trustee is seeking. Not only is it unclear what

"intangible" property the Trustee believes is in the Movants' possession, but it is also unclear

how they would turn over that "intangible" property.

In order to adequately state an action for turnover under 11 U.S.C. § 542(a), a plaintiff

must allege the following: (1) that the property is in the possession, custody, or control of

another entity; (2) that the property can be used in accordance with Code section 363 as property

of the estate; and (3) that the property has more than an inconsequential value to the debtor's

estate. *See In re Matheny*, 138 B.R. 541, 548 (Bankr. S.D. Ohio 1992) (citing 11 U.S.C.

§ 542(a)). Here, the Trustee has not alleged any facts sufficient to sustain any of these elements.

---

[8] In addition to the reasons set forth *infra*, Count V should be dismissed because it is duplicative of a pending federal court case. This is one of four actions and one of two pending actions (including a pending contested matter) by which the Trustee (or his predecessor debtor-in-possession) seeks turnover of this same unspecified property. (*See* pending Motion to Compel (Dkt. Entry No. 723); dismissed Adv. No. 09-00689-DWK; and dismissed Adv. No. 09-00810-DWK). Where duplicate proceedings are brought in federal court, they are appropriately dismissed. As a court in this District held recently, following a long line of precedent, "[t]his Court has the authority to administer its docket and dismiss an action that is duplicative of another federal lawsuit." *McReady v. O'Malley*, 2010 U.S. Dist. LEXIS 20350, *13-*14 (D. Md. Mar. 8, 2010). That guiding principle is intended to serve two important purposes: (1) to "avoid duplicative litigation," *id*. (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)), and "foster judicial economy," *id*. (citing *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000)); and (2) "to protect parties from 'the vexation of concurrent litigation over the same subject matter.'" *Id*. The exercise of this power is certainly warranted where the Court is being asked to resolve identical, concurrent disputes brought by the same party. While the Trustee has dismissed the two adversary proceedings on this issue, he maintains a contested matter by way of the Motion to Compel turnover of the same unspecified property at issue here.

5091147

As explained above, the Trustee never identifies, with any specificity, what property is in the Movants' possession.  Instead, the Trustee uses generic categories of things, *e.g.*, "various books, compilations, financial and accounting records, decks and other tangible and intangible property."  (Compl. ¶ 186.)  Since the Trustee does not identify the property allegedly taken and in possession of the Movants, the Trustee cannot allege that the property can be used in accordance with Code section 363 or that that the property has more than an inconsequential value to the estate.  As such, Count V should be dismissed.  *Francis*, 588 F.3d at 193 (a complaint must reveal more than the mere possibility of entitlement to relief in order to survive a motion to dismiss) (citing *Iqbal*, 129 S.Ct. at 1950; *Twombly*, 550 U.S. at 570).

Alternatively, the Trustee should be compelled to provide a more definite statement of his claim, pursuant to Federal Rule of Civil Procedure 12(e), including a specification as to the specific property which he seeks to be turned over.[9]

### D.    Count VI Must Be Dismissed For Failure to State a Claim upon Which Relief Can Be Granted Against the Movants Because The Movants are Not Beneficiaries and the Payments are Not Avoidable in the First Instance.

Count VI involves TMST non-executive payroll expenses purportedly paid by TMST post-petition.  The Trustee seeks to recover the value of these TMST wages from the Movants and not from the employees.  The Trustee's theory is apparently an offshoot of his earlier, flawed arguments relating to Counts I-IV:  that the Movants are liable as beneficiaries of TMST non-executive-payroll expenses under Code section 550.  As a matter of law, they are not.

---

[9] Count V raises the same turnover claim that was previously asserted in the complaint filed by the Debtors in Adversary No. 09-00689 and in the complaint filed by the Trustee in Adversary No. 09-00810, both of which were voluntarily dismissed by the Trustee.  Accordingly, to the extent that Count V is not dismissed with prejudice, the Movants request relief under Federal Rule of Civil Procedure 41(d) by which Count V should be stayed until the Trustee reimburses the Movants for all fees and costs incurred in the previous actions.  *See Kyte v. College of Southern Maryland*, No. DKC 2003-2558, 2005 WL 396306, at *2 (D. Md. Feb. 18, 2005) ("Most courts that have considered the question determine that attorney's fees can be part of the contingency costs that must be paid if a new action is filed.").

The factual allegations in the Complaint do not make a showing that SAF is liable under section 550, much less that derivative liability can be imposed upon Movants. In one place, the Trustee alleges in conclusory fashion that SAF payroll costs were paid post-petition by TMST, (Compl. ¶ 191), but then alleges elsewhere that TMST employees were *not* paid for SAF work. More specifically, a TMST employee, and not the Movants, "directed" that employees doing work for both TMST and SAF were *not* to be paid at all for work done for SAF. (Compl. ¶ 141.) The Trustee seems to have confused the facts he pleaded with the relief he wants. According to the allegations, TMST employees were instructed to report hours worked on SAF matters even though they would not be paid for them. (Compl. ¶ 141.) There is no allegation of fact to suggest that any TMST employee was actually paid for SAF time recorded. To the contrary, the allegations are that no such payments were made. (*See* Compl. ¶ 141.) Accordingly, even assuming *arguendo* that recategorized employees were being improperly designated, there is no right to recover for unpaid amounts found only in accounting entries.[10]

The Trustee has also failed to plead any facts showing that these TMST-employee payments were not ordinary-course payments unrecoverable under Code section 549 as a matter of law. Section 549 does not allow avoidance of a transaction that is authorized under Title 11. Fed. R. Civ. P. § 549(a)(2); *In re Southeast Hotel Props. Ltd. P'ship*, 99 F.3d 151, 153 n. 3 (4th Cir. 1996). The Trustee was appointed in October 2009, and the Debtors operated as debtors-in-possession from the petition date through September 2009, when the payroll expenses allegedly ended. (Comp. ¶ 143.) Payments during that time are authorized as "ordinary-course"

---

[10] This confusion may also have led to the Trustee's failure to state with any particularity whether the $400,000 he seeks was paid pre-petition or post-petition. In fact, whereas the conclusory allegation is that the payments may be avoided under Code section 549 as post-petition transfers, (Compl. ¶ 191), the incorporated allegations are that the payments began pre-petition and at least some of those pre-petition payments are included in the amount sought under Count VI. (*See* Compl. ¶¶ 143-144.) This additional infirmity is yet another ground for dismissal of Count VI.

payments.  See *In re Southeast Hotel Props.*, 99 F.3d at 153 n.3 (The Trustee has "the authority

to operate the debtor's business, and … the debtor-in-possession [has] all of the powers given to

a trustee under Chapter 11," including "the authority to enter into transactions in the ordinary

course of business without notice or hearing …." (citations omitted)).  There is no showing that

payment of TMST's payroll expenses during the bankruptcy proceeding were anything other

than ordinary-course payments.  In fact, the allegations are as follows:  (1) There were

employees needed for the company's wind down, (Compl. ¶ 129); (2) Those employees were to

"log all hours worked and available for work (in the building)" on bankruptcy matters, (Compl. ¶

138); (3) Hours worked for SAF were logged in a separate, non-bankruptcy computer system,

(*Id.*); and (4) TMST employees who worked on bankruptcy matters (*e.g.*, the wind down), were

paid by TMST (Compl. ¶ 141.)  Given that these employee-payroll expenses were directly

related to work for TMST, there is certainly no allegation sufficient to sustain the claim that they

fall within section 549 as unauthorized payments.

Even assuming, *arguendo*, that these payments do fall under section 549 and can be

avoided, the Movants cannot be held liable for them.  To recapitulate, the Trustee's espoused

theory is apparently that SAF is a beneficiary under Code section 550, and the Movants

somehow are liable derivatively as stockholders of SAF.  (*See* Compl. ¶¶ 59, 190-194.)[11]

The Trustee, without any factual support, seeks to hold the Movants liable derivatively as

SAF's alleged alter egos.  (Compl. ¶ 194.)  The Trustee has absolutely no support whatsoever for

that conclusory assertion, and cannot assert an alter ego theory of liability.  Courts routinely

dismiss alter ego claims where, as here, they are not adequately pleaded.  The District Court for

---

[11] As described *supra*, section 550 allows recovery from a beneficiary of a transfer of estate funds.
11 U.S.C. § 550(a).  The beneficiary must actually have received a benefit to be held liable.  *In re Meredith*, 527
F.3d at 376.

5091147

the District of Maryland has held this type of unsupported alter-ego claim to be insufficient.  See

*In re Am. Honda Motor Co., Inc. Dealerships Relations Lit.*, 941 F. Supp. 528, 551-552 (D. Md.

1996) (holding that, where complaints summarily refer to the corporation's "alter ego" several

times but only offered limited factual allegations related to this assertion, plaintiffs' allegations

were insufficient to justify piercing the corporate veil).  This Court is far from alone in requiring

support for alter-ego claims at the pleading stage.  *See*, *e.g.*, *Spagnola v. Chubb Corp.*, 264

F.R.D. 76, 87-88 (S.D.N.Y. 2010) ("Plaintiffs must plead sufficient allegations to make their

claim of alter-ego liability plausible and more than the 'mere possibility of misconduct.'"); *In re*

*Verestar, Inc.*, 343 B.R. 444, 464-65 (S.D.N.Y. 2006) ("Claims of alter ego liability must be

pleaded with particularity, and 'it is not sufficient, at the pleading stage, to make conclusory

allegations of control'") (citing *In re Sunbeam Corp*., 284 B.R. 355, 366 (Bankr. S.D.N.Y.

2002)); *Haskell v. Time, Inc*., 857 F. Supp. 1392, 1403 (E.D. Cal. 1994) (dismissing complaint

where plaintiff failed to allege sufficient facts to warrant piercing the corporate veil); *DDH*

*Aviation, LLC v. Holly*, No.Civ.A.3:03-CV-2598-R, 2004 WL 576061, at *4 (N.D. Tex. Mar. 22,

2004) (because complaint made no factual allegations in support of an alter ego theory of

liability for individual, and only stated that individual and corporate entity were doing business

as each other without averring any facts to support such conclusion, motion to dismiss was

granted).

    Because SAF was incorporated in Delaware, (Compl. ¶ 6), Delaware law governs any

attempt to make an alter ego claim or to pierce the corporate veil.  *Raceredi Motorsports, LLC v.*

*Dart Mach., Ltd.*, 640 F.Supp. 2d 660, 670 (D. Md. 2009).  Under Delaware law, "in order to

state a claim for piercing the corporate veil under an alter ego theory, [the Trustee] must show

(1) that the corporation and its shareholders operated as a single economic entity, and (2) that an

overall element of injustice or unfairness is present." *Trevino v. MersCorp, Inc.*, 583 F.Supp.2d 521, 528 (D. Del. 2008). The standard to succeed on an alter ego theory or pierce the corporate veil under Delaware law is a very high one, and a difficult task. Piercing the corporate veil under the alter ego theory requires a showing that the corporate structure itself caused fraud or injustice, and "the corporation must be a sham and exist for no other purpose than as a vehicle for fraud." *Cencom Cable Income Partners II, LP v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. Ct. 1999). Furthermore, the underlying cause of action itself cannot supply the necessary fraud or injustice. *Trevino v. Merscorp, Inc.*, 583 F.Supp. 2d at 531.

Where the Trustee does not allege abuse or injustice in the use of the corporate form, or plead facts that would give rise to an inference that the individuals created a sham entity designed to defraud investors and creditors, the claim must be dismissed. *Id.* There is not a single pleaded fact that would lead to the conclusion that SAF is a sham that should be disregarded to allow the Trustee to recover from the Movants.

      **E.**      **Counts VII and VIII Must Be Dismissed for Failure to State a Claim Upon Which Relief Can Be Granted Because There is No Contract and No Contract Damages.**

Counts VII and VIII proceed on the theory that the Movants breached a contract when no contract has been sufficiently pled. More specifically, the Trustee seeks to recover under breach-of-contract claims the cost (not value) of TMST's due diligence, which had no relationship whatsoever to a contract with the Movants.

The supposed contract giving rise to the Trustee's contract claims is TMST's "Code of Business Conduct and Ethics" ("Code of Conduct") which the Movants are alleged to have

5091147

acknowledged on or about July 22, 2003. [12] (Compl. ¶ 196, 199.) That Code of Conduct was sent by TMST to its employees and officers with an explanatory memorandum and an acknowledgment form. (*See* Exhs. 1-2.)

Whether the Code of Conduct constitutes a contract sufficient to sustain a breach-of-contract claim is governed by the law of New Mexico. [13] Under New Mexico law, the general elements of a contract are no different than elsewhere: offer, acceptance, consideration, and mutual assent. See *Garcia v. Middle Rio Grande Conservancy*, 121 N.M. 728, 731 (1996) (describing the elements of a contract).

To establish the existence of an implied contract by virtue of the Code of Conduct, the Trustee must demonstrate that the Code of Conduct contained the standard contractual elements. Here, there is no allegation that there was any consideration given to either party to the supposed "contract." Any required mutual promises must be explicitly stated in the contract. *Zarr v. Washington Tru Solutions, LLC*, 146 N.M. 274, 208 P.3d 919, 923 (N.M. Ct. App. 2009) (there

---

[12] The Trustee did not attach or otherwise provide a copy of the purported contract. That failure alone should command dismissal of the related counts because it denies the Court and the Movants the opportunity to challenge the legal sufficiency of the contract claims. To the extent the Court does not dismiss on that ground and allows the incorporation of the limited and selective quotations to the alleged contract found in the Complaint, the Movants supplement the record by attaching hereto, as exhibits 1 and 2, an unexecuted copy of what the Movants believe to be the Code of Conduct and related documents to which the Trustee refers in the Complaint. That supplementation is consistent with courts' consideration, in connection with motions to dismiss, of documents integral and attached to the Complaint. See *Braun v. Maynard*, 2010 WL 1375172, *2 (D.Md. March 31, 2010); see also *Am. Contractors Indem. Co. v. United States*, 81 Fed. Cl. 682, 686-688 (2008) (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) and *Stuler v. United States*, No. 07-642, 2008 WL 957009, at *2 (W.D. Pa. Apr. 8, 2008)), rev'd on other grounds, 570 F.3d 1373 (Fed. Cir. 2009) (in deciding a motion to dismiss, a court may consider, *inter alia*, documents referred to in the complaint).

[13] Because TMST is a Maryland corporation with its principal place of business in New Mexico, (Compl. ¶ 19), Maryland or New Mexico laws potentially govern. However, Maryland courts follow "the doctrine of *lex loci contractus*, applying the substantive law of the place where the contract was formed." *Raceredi Motorsports, LLC v. Dart Mach., Ltd.*, 640 F.Supp.2d 660, 665 (D. Md. 2009); *Konover Property Trust, Inc. v. WHE Assoc., Inc.*, 142 Md. App. 476, 490-91 (Md. Ct. Spec. App. 2002) (Maryland courts apply the principle of *lex loci contractus* when determining which law controls the enforceability and effect of a contract). Because the Code of Conduct was implemented by TMST, (Compl. ¶ 196), which had its principal place of business in New Mexico; allegedly acknowledged by the Movants who are New Mexico residents, (Compl. ¶¶ 2-3), and it was apparently created on TMST's computer system, (*see* Exh. 2, p. 5 (showing electronic-file name)), it appears that the Code of Conduct was entered into, if at all, in New Mexico. Therefore, New Mexico law governs Counts VII and VIII.

is no implied contract where the alleged promise by the employer was not sufficiently explicit). All that is alleged here is that TMST "implemented" —not negotiated— the Code of Conduct and the Movants agreed separately to comply with the implemented rules.  (Compl. ¶ 196.)  The Code of Conduct even describes a process by which the policies could be "waive[d]," and the document itself "amended or modified at any time" by TMST.  (Exh. 2 at ¶ 14.)

The unilaterally implemented and revocable Code of Conduct could not have led to any enforceable contractual rights.  *Salazar v. Citadel Comm. Corp.*, 135 N.M. 447, 90 P.3d 466 (2004) ("Under general New Mexico contract law, an agreement that is subject to unilateral modification … is illusory and unenforceable.").  Further, in alleging that the Code of Conduct is an implied contract, (Compl. ¶ 199), the Trustee must show that the Code of Conduct created the expectation of contractual rights.  *Ruesegger v. Bd. of Regents of Western New Mexico Univ.*, 141 N.M. 306, 311-13, 154 P.3d 681, 688 (N.M. Ct. App. 2006) (citing *Hartbarger v. Frank Paxton Co.*, 115 N.M. 665, 672, 857 P.2d 776, 783 (1993), which held that an implied contract is only created where an employer creates a reasonable expectation).  The creation and existence of a reasonable expectation must be evidenced by more than recitals of policy statements.  See *Stieber v. Journal Publ'g Co.*, 120 N.M. 270, 274, 901 P.2d 1321, 1324 (1987) (general policy statements in a handbook are insufficient to create an implied contract).  Simply repeating this requirement, the Trustee alleges that the Code of Conduct "gave rise to reasonable expectations of … conduct."  (Compl. ¶ 198.)  But this conclusion is belied by the actual document.  The Code of Conduct was "intended to meet the standards for a code of ethics under the Sarbanes-Oxley Act of 2002, and the listing standards of the New York Stock Exchange…."  (*Id*. at 1.)  This policy statement was simply that — a policy.  It was not a contractual agreement creating any contract expectations.

5091147

Notwithstanding the language of the Code of Conduct itself, the Trustee concludes that the "Code of Conduct controlled the employer-employee relationship." (Compl. ¶ 198.) He makes this unsupported allegation, presumably, because New Mexico law provides that an employee handbook may give rise to an implied contract, though only under certain narrowly defined parameters. *See Miller v. Auto. Club Of New Mexico, Inc.*, 420 F.3d 1098, 1132 (10th Cir. 2005). But, this Code of Conduct does not as a matter of law fit into this narrow definition. *First*, and most obviously, this is not an employee handbook. It is a simple policy statement which is alleged to attempt to meet Sarbanes-Oxley and NYSE requirements. (Exh. 1 at 1.) *Second*, there is no showing that the Code of Conduct, however characterized, controlled the employer-employee relationship. Where the only discernible promises do nothing to alter the employment relationship, the claim fails. See *Shull v. N.M. Potash Corp.*, 111 N.M. 132, 134-35, 802 P.2d 641, 643-44 (1990) (affirming summary judgment where there were no bargained-for expectations and employee handbook did nothing to alter at-will relationship). There is no allegation that the implementation of the Code of Conduct in any way altered the employer-employee relationship.

Finally, assuming *arguendo* that a contract was created by the Code of Conduct, it specifically precludes the remedy the Trustee seeks. That preclusion is the result of a liquidated damages provision limiting TMST's remedies upon any employee's failure to comply with the Code of Conduct to employment-related discipline or termination of employment. *See, e.g.*, *Drews v. Denver Recycling Co.*, 727 P.2d 1121, 1124 (Colo. App. 1986) (trial court found that an employment-termination provision in a contract for which the employee's promise was a promise to work was a liquidated damages clause). The acknowledgment form referenced in the Complaint (¶ 196) states as follows: "Further, I acknowledge that should I fail to comply with

the Code [of Conduct] I will be subject to discipline, up to and including termination of my employment." (Exh. 1 at 2.) This liquidated damages clause does not provide for breach-of-contract or any other legal remedy.

Additionally, the damages sought are not appropriate contract damages even if there were deemed to be an enforceable contract and available legal remedies. While the amount of damages need not be specified, the entitlement to the relief must be pleaded under Federal Rule of Civil Procedure 8(a)(3).

In a breach-of-contract case, damages are intended merely to restore the plaintiff to the position it would have been in were it not for the breach. *Sonntag v. Shaw*, 130 N.M. 238, 243, 22 P.3d 1188, 1193 (2001). Here, the failure to obtain Board approval in connection with a Code of Conduct did not result in the damage alleged, which is the unexplained loss of $6.7 million. There is no allegation that any of this property used or obtained by SAF and/or the Movants had any fair market value, or that TMST was looking to sell that property. In fact, the Trustee has all of the property described in Count VII and has ascribed no value to it at all.

### F.    Count IX Must Be Dismissed For Failure to State a Claim Upon Which Relief Can Be Granted Because TMST is Not a Party to the Alleged Contract.

Count IX is another contract claim, but this time relating to an Employee Confidentiality Agreement that the Trustee also fails to attach to the Complaint.[14] Importantly, this alleged contract was between each of the Movants and TMAC, not TMST. (Compl. ¶ 205.) Because TMST was not a party to any alleged contract, the Trustee alleges that the Confidentiality Agreement was intended for the benefit of TMST and TMHL, hoping to transform those non-

---

[14] The Trustee fails to make a showing of entitlement to relief simply by failing to attach the document he claims forms the basis of the contract. The count should be dismissed on this ground alone.

parties into third-party beneficiaries with standing to enforce the contract. There is no showing that this intent existed.

This purported intent to benefit TMST or TMHL is at the very heart of the matter. New Mexico law, which again governs, is clear that "[i]ntent is the principal touchstone for determining whether a third party beneficiary contract exists." 13 Williston on Contracts S. 37:8 (4th ed.); *O'Connor v. R.F. Lafferty & Co., Inc.*, 965 F.2d 893, 901 (10th Cir. 1992) ("the key inquiry when determining whether a nonsignatory to an agreement is a third party beneficiary is the intent of the parties") (internal citations omitted). This intent cannot merely be alleged. It must be apparent from the contract that there was an actual intent to benefit the third party in order to confer third-party-beneficiary status. *Id.*; *Jaramillo v. Providence Washington Ins. Co.*, 117 N.M. 337, 871 P.2d 1343 (1994) (intent to benefit third party must appear either from the contract itself or from evidence that the person claiming to be the beneficiary is in fact the intended beneficiary).

It is well established that the party bringing the claim as a third party beneficiary has the burden of showing that the provision was for his direct benefit. *Willis v. E.I. Du Pont De Nemours & Co.*, 76 F. Supp. 1010, 1014 (E.D. Okla. 1948), judgment rev'd on other grounds, 171 F.2d 51 (10th Cir. 1948); *see also Reyna Fin. Corp. v. Art Janpol Volkswagen, Inc.*, 110 N.M. 796, 798, 800 P.2d 731, 733 (N.M. 1990) (the burden of proof was on the party claiming to be the third party beneficiary to show that it was an intended third-party beneficiary of the agreements). The Trustee has failed to meet his burden to demonstrate that the intent of TMAC entering into any confidentiality agreement was to benefit TMST or TMHL. To the contrary, neither the name TMST nor THML appear anywhere in the portion of the agreement transcribed in the Complaint. (Compl. ¶ 207.) The only company identified in the agreement is TMAC.

32

(*Id.*)  Moreover, the agreement governs only TMAC's property and provides for the return of any property to TMAC.  (*Id.* (stating that any confidential information "shall be and remain the sole and exclusive property of" TMAC.))  As such, it cannot be said that any portion of this agreement could apply to any of the alleged TMST property listed in the Complaint.

Any incidental benefit of TMAC's confidentiality agreement to TMST or TMHL is insufficient to demonstrate TMAC's intent to benefit TMST or TMHL.  Such an extension of third-party beneficiary status would allow any person to claim that status with respect to banks, government agencies, corporations, and any conceivable entity that might store confidential information relating to its clients and enter into confidentiality agreements with its own employees.  Such an extension is certainly unwarranted here where there is no evidence of intent, the agreement has not even been produced by the Trustee, and the portion of the agreement provided makes clear that it does not relate at all to TMST property.

### G.    Count X (applying only to Goldstone) Must Be Dismissed For Failure to State a Claim Upon Which Relief Can Be Granted Under Maryland Law Establishing a Presumption of Good Faith.

Count X alleges that Goldstone breached his duties as a Director to TMST.  Even before *Twombly* and *Iqbal*, Maryland law required more than conclusory claims in the corporate-director context, and required specific factual allegations demonstrating bad faith on the part of a director.  As one Maryland District Court held, "Despite the customary 'notice pleading' standard applicable in actions filed in federal court, … even for pleading purposes, substantive Maryland law places a 'thumb on the scale' in …actions instituted against corporate directors…."  *Full Value Partners, L.P. v. Neuberger Berman Real Estate Income Fund, Inc.*, 2005 U.S. Dist. LEXIS 6581, at *10-*11 (D. Md. Apr. 18, 2005) (citations omitted).

Here, the Trustee has not alleged facts to overcome the statutory presumption of good faith existing under Maryland law.  Maryland Corporations and Associations ("M.C.A.") section

33

2-405.1, while codifying the standard of care for corporate directors to perform his duties in good faith, also includes a very strong statutory presumption that a director's actions are reasonable.  M.C.A. § 2-405.1(e); *see also*, *Patterson v. Patterson*, 03-C-05-005429, 2006 WL 990998, at *4 (Md. Cir. Ct. Jan. 31, 2006) ("It is presumed that a director's action satisfies the standards of care mandated by" § 2-405. 1(a)).  By virtue of this rule, business decisions are "insulate[d]" from judicial review "absent a showing of fraud or bad faith," which includes acts "unsupported by facts or otherwise arbitrary."  *Chisholm v. Hyattstown Fire*, 115 Md. App. 58, 70 (1997) (citations omitted).  This presumption is difficult to overcome, and it requires a significant factual showing of bad faith at the pleading stage.  *Patterson v. Patterson*, 03-C-05-005429, 2006 WL 990998, at *4 (Md. Cir. Ct. Jan. 31, 2006) (holding that Plaintiff failed to state a claim for violation of § 2-405.1).

Rather than make a factual *showing* of fraud at the pleading stage, the Trustee falls far short by merely labeling the Count as one for "Fraud, Concealment, [and] Misrepresentation" accompanying an alleged breach of § 2-405.1.  The Trustee follows these labels only with allegations and general conclusions, recycled from elsewhere in the Complaint, that parrot the statutory elements but do not support them with any factual allegations.

The Trustee begins by repeating the provisions of M.C.A. § 2-405.1.  (Compl. ¶ 211.) Importantly, one of the provisions is that a director must perform his duties with "the care that an ordinarily prudent person in a like position would use *under similar circumstances*."  M.C.A. § 2-405.1(a)(3) (emphasis added).  The Trustee fails to even describe the circumstances that should be considered.  In this case, the circumstances include that the Movant was consulting with TMST's counsel and the TMST Board of Directors at every turn.[15]  (*See*, *e.g.*, Compl. ¶ 72

---

[15] There is similarly no evidence of malfeasance with respect to counsel with whom the Movant consulted.

(Movant was advised by Garrett Thornburg (Chairman of TMST's Board) that Thornburg wanted to amend the TMST management agreement); ¶ 78 (Movant and counsel to the debtor advised the Board of Directors regarding proposed amendment to TMAC management agreement); ¶ 79 (with Movant present, TMST's counsel advised her client regarding the WARN Act payments); ¶¶ 120-121 (consulted with TMST's counsel regarding accuracy of Board minutes to reflect that the Board was abandoning a corporate opportunity); ¶¶ 126-127 (was advised by the TMST Board of Directors that TMST's new counsel from Venable, Jim Hanks, had advised TMST that directors and officers "should not be liable to the Company for pursuing" a business strategy "if the company is not able to undertake or pursue" it). Moreover, the reasonable reliance on the advice of counsel, here TMST's counsel, immunizes a director under Maryland law. M.C.A. § 2-405.1(b)(i)-(ii).

Under these circumstances, the Trustee must overcome the presumption that a director getting the advice of TMST's counsel and of the Chairman of TMST Board of Directors did not act in good faith *and* that he unreasonably relied on the advice of counsel. The Trustee does not make any showing to overcome the presumptions of good faith and reasonable reliance.

The requisite showing of fraud in connection with Maryland statute combined with the requisite showing under Rule 9(b) creates a high bar the Complaint simply fails to clear. To make a showing of fraud, there must be an alleged specific misrepresentation upon which the plaintiff relied to his detriment. See, *supra*, p. 6; *Learning Works, Inc.*, 830 F.2d at 545. The only mention in this Count of any alleged misrepresentation is as general as can be and reads as follows: "[Movant's] misrepresentations to TMST's board members and professionals … demonstrate that he knew that his actions were not in good faith...." (Compl. ¶ 213.) This

conclusory allegation fails to meet any standard, including, of course, Rule 9(b)'s heightened pleading standard.

The remaining allegations in this conclusory list are not relevant to fraud and do not begin to show bad faith. In fact, they are well within the parameters of the presumption of good faith where a director performs his duties. For example, one allegation is that, as director, the Movant "participated" in the termination of one of TMST's lawyers. (Compl. ¶ 213(vi).) That allegation has no bearing on the requisite showing of fraud. Another similarly inconsequential allegation is that the Movant "aborted" an attempt to get board approval to pursue a business venture. (Compl. ¶ 213(V).) A third allegation is that the Movant made an effort to amend a management agreement, (Compl. ¶ 213(vii), which was amended upon approval by the TMST Board and at the request of the Board's chairman, (Compl. ¶ 72 (Thornburg says that the management agreement should be amended), ¶ 78 (TMST's counsel presented the amendments to the Board), and ¶ 81 (the Board approved the amendments).) Another allegation is that the Movant approved the so-called "Unauthorized Payments," (Compl. ¶¶ 213(ii)), but those payments were approved and came from TMAC and not from TMST. (Compl. ¶ 61 (approval was sought from Garrett Thornburg), ¶ 60 (payments made to TMAC employees by TMAC). Similarly, as discussed *supra*, at least some of the vendor payments the Trustee complains of also came from TMAC. (See *supra* at pp. 16, 18) Finally, the allegation regarding the Orrick payments, (Compl. ¶ 213(x)), are inadequate to sustain the Trustee's claims. It is unclear on what the Trustee bases this allegation to suggest that the Movant is responsible and acted in bad faith or fraudulently with respect to TMST's payment of one of its lawyers. These irrelevant and flimsy allegations cannot support the weighty showing that must be made to maintain a breach-of-duty-by-fraud claim.

36

5091147

Even assuming, *arguendo*, that there was a violation of § 2-405.1, (which there was not), the prayers for relief are wildly out of line with any plausible loss. For example, prayers G and J seek $2,000,000 and $170,000, respectively, in sunk costs that relate to none of the alleged facts. Prayer L is for payments to Orrick in a larger amount than the alleged payments to Orrick. Prayer K actually tries to hold the Movant liable for TMST's voluntary cost in conducting an investigation into and defending an unidentified motion filed by the United States Trustee. The Movant cannot be held liable for payments that were not remotely the consequence of any breach of a duty.

### H.    Count XI Must Be Dismissed Because No Claim for Breach of Duty of Loyalty Exists Under Applicable Law.

The Trustee claims that the Movants breached the duties of loyalty they owed by virtue of their roles as officers "of one or more of the Debtors." (Compl. ¶ 218.) Count XI must be dismissed because Maryland does not recognize a stand-alone tort of breach of fiduciary duty of loyalty. See *Faller III v. Faller Jr.*, DKC-09-0889, 2010 WL 1141202, at *5 (D. Md. March 22, 2010) (in dismissing count alleging breach of fiduciary because the cause of action could not exist alone, court noted that "[i]n Maryland, fiduciary duties are recognized and can be enforced, but not through independent actions"); *MFI-DPLH, LLC v. Ingram*, WDQ-09-2358, 2010 WL 311636, at *6 (D. Md. Jan. 20, 2010) (Maryland does not recognize a separate tort action for breach of fiduciary duty); *Sauerwein v. International Brotherhood of Locomotive Engineers*, MJG-02-27552005, WL 1383169, at *9 (D. Md. May 10, 2005) (citing multiple cases finding that there is no redress under Maryland law for breach of fiduciary duty as an independent cause of action, and so the claim was dismissed); *Carnegie Int'l. Corp. v. Grant Thornton*, LLP, 24-C-00-002639, 2005 WL 851064 at *26 (Md. Cir. Ct. Apr. 6, 2005) (plaintiff could not recover

under a claim of breach of duty of loyalty because Maryland law does not recognize a universal or omnibus tort for the redress of breach of fiduciary duty where other remedies exist).

The Trustee sets forth a stand-alone cause of action for breach of duty of loyalty.  (*See* Compl. ¶ 219.)  No such claim exists as a matter of law.  That legal deficiency cannot be overcome by offering conclusory allegations of unspecified "misrepresentations to TMST Board members and/or professionals of the Debtors."  (Compl. ¶ 220.)  Notwithstanding the heightened pleading standards of Rule 9(b), there is no showing which Movant made a misrepresentation, to whom it was made, or the benefit derived.  Those gaping holes cannot be filled by pleading that the alleged misrepresentations were made by one or more of the defendants and to the Board "and/or" one or more of a number of "professionals."  (Compl. ¶ 220.)  Because the Trustee failed to make any showing that would entitle him to relief, Count XI must be dismissed.

I. **Count XII Must Be Dismissed for Failure to State a Claim Upon Which Relief Can Be Granted Against the Movants Because There Has Been No Enrichment and the Trustee is Not Entitled to His Sunk Costs.**

The Trustee has failed to state a claim for unjust enrichment against the Movants as the Complaint fails to allege facts sufficient to meet the two prongs of an unjust enrichment claim. To prevail on a claim of unjust enrichment in New Mexico[16], one must show that (1) another has been knowingly benefited at one's expense, (2) in a manner such that allowance of the other to retain the benefit would be unjust.  *Ontiveros Insulation Co., Inc. v. Sanchez*, 129 N.M. 200, 204, 3 P.3d 695, 698 (N.M. Ct. App. 2000).  For the claim to survive, one must be able to show that each of the Movants clearly benefited.  See *Billsie v. Brooksbank*, 525 F.Supp.2d 1290, 1298 (D.N.M. 2007) (court held that plaintiff was unable to show that defendant benefited from the

---

[16] Because an unjust enrichment claim is a quasi-contract claim, choice of law would follow the doctrine of *lex loci contractus*, applying the substantive law of the place where the contract was formed." *Raceredi Motorsports, LLC v. Dart Mach., Ltd.*, 640 F.Supp.2d 660, 665 (D. Md. 2009).  Therefore, New Mexico law would govern.

transaction, which is required as the first element of an unjust enrichment claim in New Mexico). The Trustee has failed to plead any benefit to the Movants or any detriment to TMST.

The mere conclusory statement that the Movants used for personal gain ideas that had been discussed and abandoned by TMST fails to show or specifically allege any actual benefit to the Movants.  Similarly, the broad and ambiguous allegation that the Movants' use of the "Debtors' employees, offices, hardware, software, intellectual property, monies and other assets … for [the Movants'] own personal gain" fails to describe or identify any benefits the Movants received; rather, the Complaint simply describes various asset classes without any allegations of the *actual benefits* any *actual assets* may have brought to the Movants.  Because the Trustee has failed to show either one of the two required elements to state an unjust enrichment claim, Count XII must be dismissed.

Further, even if the Trustee were able to show that the Movants knowingly benefited at TMST's expense, and the Trustee could show that the Movants' respective retention of such benefit is unjust, both of which he has plainly failed to do, the Complaint fails to specify damages as required for an unjust enrichment claim.  A plaintiff can only be awarded the "damages it has suffered, or the amount the defendant has been enriched, by virtue of the defendant's misconduct."  *Russo v. Ballard Medical Products*, 550 F.2d 1004, 1016 (10th Cir. 2008).  The Trustee has failed to allege facts to show any link between any alleged misconduct — which is the alleged use of TMST's *work product* — and the damages alleged to include the TMST's sunk costs, payroll, and vendor expenses.  (Compl. ¶ 226.)  The Trustee has not shown that any use of the "work product" caused or could have caused TMST to make any of the payments it lists in its prayer for relief.  Without a causal link, the claim fails.

Finally, the baseless alter-ego allegation is repeated in Count XII, this time to allege that the Movants received an indirect benefit through SAF. (Compl. ¶ 224.) As discussed *supra* in Section II(D), a number of courts have dismissed alter ego claims where not adequately pleaded, including the United States District Court for the District of Maryland in *In re American Honda Motor Co., Inc. Dealerships Relations Litigation*, 941 F. Supp. 528, 551-552 (D. Md. 1996) (holding that, where complaints summarily refer to the "alter ego" of American Honda several times but only offered limited factual allegations related to this assertion, plaintiffs' allegations were insufficient to justify piercing the corporate veil); *see supra* at pp. 25-26.

The Trustee cannot simply use the term "alter ego" in the Complaint to sufficiently state a claim of alter ego liability as to the Movants in relation to SAF. The Trustee has not alleged any facts to show that SAF itself was a sham and existed for no other purpose than as a vehicle for fraud, and the Complaint fails to set forth any facts necessary to pierce the corporate veil under Delaware law. Therefore Count V, resting on a theory of alter ego liability, must be dismissed.[17]

---

[17] To the extent Count XII is not dismissed outright, it should be merged with Counts VII and VIII. New Mexico, like other jurisdictions, deems unjust enrichment claims to be *quantum meruit* claims, or ones of quasi-contract. *Ontiveros Insulation Co., Inc. v. Sanchez*, 129 N.M. at 203-204. While distinguishing between contract claims and *quantum meruit* or unjust enrichment claims, *see, e.g., Tom Growney Equip., Inc. v. Ansley*, 119 N.M. 110, 112, 888 P.2d 992, 994 (N.M. Ct. App. 1995) ("New Mexico has recognized a theory of *quantum meruit* distinct from contract"), New Mexico courts have held that an unjust enrichment claim is so closely related to a contract action that courts will treat them as one. See *Hydro Conduit Corp. v. Kemble*, 110 N.M. 173, 178-79, 793 P.2d 855, 860-61 (N.M. 1990) (finding that unjust enrichment claim is so closely related to action based on contract, that unjust enrichment claim could not survive where contract claims were barred by sovereign immunity statute). In fact, New Mexico courts have merged claims for unjust enrichment with breach of implied contract claims since the two are essentially the same action. *Woodard v. Fidelity Nat. Title Ins. Co.*, No. 06-1170, 2008 WL 5737364, n. 1 (D.N.M. Dec. 8, 2008) ("In each of the five states [one of which is New Mexico], putative class members' claims for breach of implied contract would merge with their unjust enrichment claims."). Therefore, Count XII, if not dismissed, should be merged with Counts VII and VIII which allege breach of implied contract.

40

**J.    Count XIII Must Be Dismissed For Failure to State a Claim Upon Which Relief Can Be Granted Against the Movants Because Civil Conspiracy is Not a Valid Cause of Action Under Applicable State Law.**

Count XIII alleges that Movants engaged in a civil conspiracy.  That Count must be dismissed for two reasons: (1) no valid independent action for civil conspiracy exists under either New Mexico or Maryland law, and (2) the Trustee has failed to make the requisite showing of a civil conspiracy based on an alleged underlying tort.

New Mexico's and Maryland's laws on civil conspiracy are virtually the same, and would in any event have the same substantive result: because civil conspiracy is not recognized as an action independent of an underlying tort in either state, and because the elements of civil conspiracy under both state laws are not pleaded in the Complaint with the required particularity, Count XIII must be dismissed.[18]

In New Mexico, civil conspiracy requires showing that (1) an agreement between two or more individuals existed, (2) specific wrongful acts were carried out by the defendants pursuant to the conspiracy, and (3) the plaintiff was damaged as a result of such acts.  Unlike conspiracy in the criminal context, a civil conspiracy is not actionable and does not provide an independent basis for liability.  *Seeds v. Lucero*, 137 N.M. 589, 593-94, 113 P.3d 859, 863-64 (N.M. Ct. App. 2005).  New Mexico requires that a plaintiff allege *specific* facts showing an agreement and concerted action amongst defendants to successfully state a valid claim for civil conspiracy. *Tonkovich v. Kansas Bd. Of Regents*, 159 F.3d 504, 533 (10th Cir. 1998).

Similarly, under Maryland law, a claim for civil conspiracy has the following elements: (1) a confederation of two or more persons by agreement or understanding, (2) some unlawful or

---

[18] When the outcome is the same under both states' laws, or where both states' laws are substantively similar or the same, it is unnecessary to conduct a choice of law analysis. *Wallace v. Mercantile County Bank*, 514 F.Supp.2d 776, 791 (D. Md. 2007) (court found it unnecessary to conduct choice of law analysis where the outcome was the same under Maryland and Pennsylvania law).

41

tortious act done in furtherance of the conspiracy or use of unlawful or tortious means to accomplish an act not in itself illegal, and (3) actual legal damage resulting to the plaintiff. *Asafo-Adjei v. First Sav. Mortg. Corp*, No. RWT 09cv2184, 2010 WL 730365, at \*4 (D. Md. Feb. 25, 2010). Maryland courts have consistently held that conspiracy is not a separate tort capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff. *Id.* (citing *Lloyd v. GMC*, 397 Md. 108, 916 A.2d 257, 284 (Md. 2007)). These principles of a dependent action requiring an agreement and an underlying action were described recently in this District, as follows:

> In Maryland, "a civil conspiracy is a combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal, with the further requirement that the act or means employed must result in damages to the plaintiff."

*In re Rood*, 2010 WL 1068088, at \*10-\*11 (D. Md. Mar. 17, 2010) (citations omitted).

The initial demonstration by the Trustee must be that there was an agreement or understanding. This combination of two or more persons by an agreement or understanding, must be pleaded with particularity. The required showing under Rule 8 is insufficient in this context. See *Nat'l Constructors Ass'n v. Nat'l Elec. Contractors Ass'n, Inc.*, 498 F. Supp. 510, 528 (D. Md.1980) (requiring greater specifics for a conspiracy claim). Beyond Rule 8, "[t]he more specific requirements for an allegation of conspiracy are that the pleader provide, whenever possible, some details of the time, place and alleged effect of the conspiracy." *Id.* (internal citations and quotations omitted). This agreement must be clearly and specifically alleged because the "[i]ndependent acts of two wrongdoers do not make a conspiracy." *Murdaugh Volkswagen, Inc. v. First Nat. Bank of South Carolina,* 639 F.2d 1073, 1076 (4th Cir. 1981); *see also, Waller v. Butkovich*, 584 F. Supp. 909, 931 (M.D.N.C.1984) ("Plaintiffs must expressly allege an agreement or make averments of 'communication, consultation, cooperation, or

42

5091147

command' from which such an agreement can be inferred.") (citing *Weathers v. Ebert*, 505 F.2d 514, 517 (4th Cir.1974)).

The Trustee has made no showing whatsoever and has provided no specifics. Instead, the Trustee uses the word "secret" when referring to various "plans," perhaps believing that the use of nefarious words would relieve him of pleading obligations. It does not. By way of example, the Trustee claims that the Movants "secretly conspired to have unauthorized 'bonuses' paid to" themselves and other defendants. (Compl. ¶ 59.) There is no mention as to the time, place, or manner of this conspiracy. As such, it does not meet the prerequisites for a conspiracy claim. Additionally, this is the same allegation discussed *supra* that relates to bonuses paid by TMAC, not TMST, and authorized by a payroll officer for TMST and TMAC and by Garrett Thornburg, who was the Chairman of TMST's Board of Directors. (Compl. ¶ 61.) There is no agreement shown by these facts (though it is clear that any actions taken included obtaining authorization from those in a position to authorize the payment). Because there is no agreement shown, Count XIII must be dismissed without anything more. Nonetheless, we will address the additional allegations made in Count XIII.

Conspiracy cannot exist alone, and requires an underlying, primary tort that injured the plaintiff. *Estate of White v. R.J. Reynolds Tobacco Co.*, 109 F. Supp.2d 424, 428 (D. Md. 2000). Because conspiracy cannot stand alone as a cause of action, the Trustee bootstraps two host claims: breach of fiduciary duties of loyalty and "misappropriat[ion]." (Compl. ¶ 229.) Looking at the first of these host claims, as described *supra*, there is no separate tort for breach of fiduciary duty of loyalty. See *Faller III v. Faller Jr.*, DKC-09-0889, 2010 WL 1141202, at *5 (D. Md. March 22, 2010). Because the alleged host tort — breach of fiduciary duty — also needs a host, it cannot underlie a conspiracy claim. The Trustee's second bite at the apple is an

43

alleged misappropriation of the same vague set of "tangible and intangible assets" trotted out in Count V, the turnover count.  (*compare*, Compl. ¶ 229, Compl. ¶ 186.)  As described in opposition to Count V, there is no evidence that any property was misappropriated, and certainly no evidence is provided in the Complaint.  Because there is no underlying tort adequately pleaded, Count XIII fails as a matter of law.

Without regard to that fatal flaw, and without specifying any property, the Trustee sets forth allegations of "overt acts."  (Compl. ¶ 230.)  Even here, though, the Trustee simply repeats allegations from other Counts in the Complaint, now labeling them as "overt acts."  It is unclear even whether the Trustee is seeking relief for an alleged conspiracy or simply providing a summary of the other twelve counts.  At all events, the Trustee is not entitled to the sought-after damages which bear no relationship to the alleged conspiracy.

## III.    Conclusion

Because the Complaint is replete with conclusory allegations unsupported by fact or law, as demonstrated by a review of the Complaint with its lack of specific allegations and internal inconsistencies, and for the specific reasons set forth above, Counts I through XIII must be dismissed for the Trustee's failure to state a claim upon which relief can be granted.

Dated: May 3, 2010                          Respectfully Submitted,


/s/ *Samuel Rosenthal, Esquire*
Samuel Rosenthal (6170)
Mark A. Salzberg (*pro hac vice*)
Barry E. Reiferson (*pro hac vice*)
PATTON BOGGS LLP
2550 M Street, NW
Washington, DC 20037-1350
Tel:    (202) 457-6321
Fax:    (202) 457-6315

*Counsel for Larry A. Goldstone and Clarence G. Simmons, III*

44