IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| TMST, INC. (f/k/a Thornburg Mortgage, Inc.,) | ) |
| | ) Case No. 09-17787, 17790-17792-DWK |
| Debtor | ) |
| | ) (Jointly administered under |
| | )  Case No. 09-17787) |
| | ) |
| | ) |
| | ) |
| JOEL I. SHER, Chapter 11, Trustee | ) |
| | ) |
| Plaintiff, | ) Adv. Proc. No. 10-00137 DWK |
| | ) |
| v. | ) |
| | ) |
| LARRY A. GOLDSTONE, *et al*. | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

**DEFENDANTS ORRICK HERRINGTON & SUTCLIFFE LLP AND KAREN
DEMPSEY'S MOTION TO DISMISS AND/OR STRIKE**

Defendants ORRICK HERRINGTON & SUTCLIFFE LLP AND KAREN DEMPSEY (collectively "defendants"), by their undersigned counsel, hereby move to dismiss all counts pleaded against them in the Trustee's Complaint For Damages And Other Relief, to wit, Counts XI, XIII, XIV, and XV-XX, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, as made applicable by Rule 7012 of the Federal Rules of Bankruptcy Procedure.

In the alternative, defendants move to strike certain allegations contained in Counts XI, XIII, XIV, and XV-XVIX pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.

The grounds and authorities for this motion are set forth in more particularity in the accompanying memorandum filed in support hereof.

WHEREFORE, the defendants respectfully request that this Court:

A.    Grant the Motion; and

B.    Grant such other and further relief as is just and appropriate under the circumstances.

Dated:  May 3, 2010

Respectfully Submitted,

_____

Richard M. Kremen (Bar No. 00532)
Dale K. Cathell (Bar No. 26924)
DLA Piper LLP (US)
6225 Smith Avenue
Baltimore, Maryland 21209
Telephone:  (410) 580-4191
Facsimile:  (410) 580-3191
richard.kremen@dlapiper.com
dale.cathell@dlapiper.com

James L. Lopes (*Pro Hac Vice Admission Pending*)
Pamela Phillips (*Pro Hac Vice Admission Pending*)
Amy L. Bomse (*Pro Hac Vice Admission Pending*)
Howard Rice Nemerovski Canady Falk & Rabkin
Three Embarcadero Center, Seventh Floor
San Francisco, California 94111
Telephone:  (415) 434-1600
Facsimile:  (415) 677-6262
Jlopes@howardrice.com
pphillips@howardrice.com
abomse@howardrice.com

*Attorneys for Orrick Herrington & Sutcliffe LLP and Karen Dempsey*

W03 029820021/1613891/v1

- 3 -

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| TMST, INC. (f/k/a Thornburg Mortgage, Inc.,) | ) |
| | ) Case No. 09-17787, 17790-17792-DWK |
| Debtor | ) |
| | ) (Jointly administered under |
| | )   Case No. 09-17787) |
| | ) |
| | ) |
| | ) |
| JOEL I. SHER, Chapter 11, Trustee | ) |
| | ) |
| Plaintiff, | ) Adv. Proc. No. 10-00137 DWK |
| | ) |
| v. | ) |
| | ) |
| LARRY A. GOLDSTONE, *et al*. | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

**MEMORANDUM IN SUPPORT OF DEFENDANTS KAREN DEMPSEY AND ORRICK
HERRINGTON & SUTCLIFFE LLP'S MOTION TO DISMISS AND/OR STRIKE
PLAINTIFF'S COMPLAINT**

# TABLE OF CONTENTS

**Page**

ARGUMENT ................................................................................................ 2

I.   THE COMPLAINT FAILS TO STATE A CLAIM FOR BREACH
     OF A CORPORATE OFFICER'S DUTY OF LOYALTY. ................... 3

     A.   The Complaint Fails To Allege Ms. Dempsey Was A Corporate
          Fiduciary. ............................................................................... 4

     B.   Even If Ms. Dempsey Were A Corporate Fiduciary, The
          Complaint Fails To Allege Any Breach Of Her Duties As
          Assistant Secretary. ............................................................... 7

II.  THE SECONDARY LIABILITY CLAIMS MUST BE DISMISSED ...... 10

     A.   Choice of Law. ...................................................................... 10

     B.   The Complaint Fails To State A Claim For Aiding And
          Abetting. ................................................................................. 12

     C.   The Complaint Fails To State A Claim For Conspiracy To
          Breach Fiduciary Duties. ...................................................... 13

III. THE TRUSTEE MAY NOT RECOVER FRAUDULENTLY
     TRANSFERRED ASSETS FROM A NON-TRANSFEREE AND
     NON-BENEFICIARY. ............................................................................ 14

IV.  COUNT XX MUST BE DISMISSED OR STAYED BECAUSE IT IS
     DUPLICATIVE OF THE U.S. TRUSTEE'S COMPLAINT FOR
     DISALLOWANCE AND DISGORGEMENT OF ORRICK'S POST-
     PETITION FEES. .................................................................................... 17

CONCLUSION ........................................................................................... 18

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Alexie, Inc. v. Old South Bottle Shop Corp.*, 345 S.E. 2d 875 (Ga. Ct. App. 1986) .......... 5

*Alleco Inc. v. Henry & Jeanette Weinberg Foundation, Inc.*, 665 A.2d 1038 (1995) .......... 4

*Allied Capital Corp. v. GC-Sun Holdings L.P.*, 910 A.2d 1020 (Del. Ch. 2006) .......... 14

*Aon Consulting, Inc. v. Midlands Financial Benefits, Inc.*, 748 N.W. 2d 626 (Neb. 2008) .......... 5

*Ashcroft v. Iqbal*, 556 U.S. —, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) .......... 2, 3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 2, 3, 9

*Buckley v. Deloitte & Touche USA LLP*, No. 06 Civ. 3291, 2007 WL 1491403 (S.D.N.Y. May 22, 2007) .......... 11

*GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc.,* 83 Cal. App. 4th 409 (2000), overruled on other grounds, *Reeves v. Hanlon*, 33 Cal. 4th 1140 (2004) .......... 4, 5

*Gold v. Sloan*, 486 F.2d 340 (4th Cir. 1973) .......... 5

*Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983) .......... 13

*Ideal Food, Inc. v. Action Leasing Corp.*, 413 So.2d 416 (Fl. Dist. Ct. App. 1982) .......... 6

*In re Ampat Southern Corp.*, 128 B.R. 405 (D. Md. 1991) .......... 15

*In re Fedders North America*, 405 B.R. 527 (D. Del. 2009) .......... 14

*In re Magnesium Corp. of Am.*, 399 B.R. 722 (S.D.N.Y. 2009) .......... 11

*In re Merritt Dredging Co., Inc.*, 839 F.2d 203 (4th Cir. 1988) .......... 4, 10

*In re Verilink Corp.*, 408 B.R. 420 (N.D. Ala. 2009), reversed on other grounds, 410 B.R. 697 (N.D. Ala. 2009) .......... 11

*Int'l. Brotherhood of Teamsters v. Willis Corroon Corp.*, 802 A.2d 1050, n.1 (2002) .......... 4

# TABLE OF AUTHORITIES

**Page(s)**

*Kann v. Kann*, 690 A.2d 509 (1997)    7

*Kipperman v. Onex Corp.*, 411 B.R. 805 (N.D. Ga. 2009)    13

*Lockheed Aircraft Corp. v. Campbell*, 110 F. Supp. 282 (S.D. Cal. 1953    6

*Mack v. Newton*, 737 F.2d 1343 (5th Cir. 1984)    14

*McReady v. O'Malley*, No. RWT 08cv2347, 2010 U.S. Dist. LEXIS 20350 (D. Md. Mar. 8, 2010)    17

*Mohammad v. Toyota Motor Sales, U.S.A., Inc.*, 947 A.2d 598 (Md. App. 2008)    10, 11

*NAACP v. Golding*, 679 A.2d 554 (Md. 1996)    4, 10

*People v. Int'l Steel Corp.*, 102 Cal. App. 2d Supp. 935 (Cal. Ct. App. 1951)    6

*Rael v. Page*, 222 P.3d 678 (N.M. Ct. App., 2009)    12, 14

*Shenker v. Laureate Education, Inc.,* 983 A.2d 408 (2009)    4, 13

*Solow v. Stone*, 994 F. Supp. 173 (S.D.N.Y. 1998)    11

*Storetrax.com v. Gurland*, 915 A.2d 991 (2007)    4, 10

*United States ex rel. Chunie v. Ringrose*, 788 F.2d 638 (9th Cir. 1986)    2

*Warzon v.* Drew, 60 F.3d 1234 (7th Cir. 1995)    3

*Weisbuch v. County of Los* Angeles, 119 F.3d 778 (9th Cir. 1997)    3

*Wilkerson v. Butler*, 229 F.R.D. 166 (E.D. Cal. 2005)    14

**Statutes**

11 U.S.C. §550(a)    14

Fed. R. Civ. Proc.
   §9    9
   §12 (b)(6)    2

# TABLE OF AUTHORITIES

**Page(s)**

### Other Authorities

SEC Div. of Corporation Finance, Compliance and Disclosure Interpretations, Exchange Act Sect 16 Q.109.01 (May 23, 2007) ..... 6

*Interpretive Release on Rules Applicable to Insider Reporting and Trading*, SEC Release No. 34,18114 (Sept. 24, 1981) ..... 5

P. Romeo & A. Dye, *Section 16-Insider Reporting and Short-Swing Liability, Treatise and Reporting Guide,* §2.01, p. 73 (3rd ed. 2008) ..... 6

In October 2008, Thornburg Mortgage, Inc. retained the law firm of Orrick Herrington & Sutcliffe LLP ("Orrick") and Orrick partner Karen Dempsey to serve as the company's corporate counsel. In May 2009, when Thornburg Mortgage, Inc. and some of its affiliates filed for bankruptcy, they retained Orrick as special counsel to the debtors under section 327(e) of the Bankruptcy Code. (For the sake of simplicity, we hereinafter refer to the debtors collectively as "TMST.") As special counsel, Ms. Dempsey provided advice on certain corporate and securities law matters, and other Orrick partners represented TMST in securities litigation and on insurance coverage matters. Ms. Dempsey is not a bankruptcy lawyer, and she did not provide TMST with bankruptcy advice.

Orrick and Ms. Dempsey owed TMST certain duties arising out of their attorney-client relationship with TMST, and some of the claims allege violations of those duties. However, the Trustee is also attempting to impose liability on Ms. Dempsey and Orrick for the acts and omissions of various third parties over whom Orrick had no control, such as employees of TMST and a separate management company known as Thornburg Mortgage Advisory Corporation or "TMAC." The Trustee's complaint is long on rhetoric but short on facts that would show Ms. Dempsey knew about the allegedly improper conduct of these third parties, much less that she assisted them in that conduct. Using novel theories of conspiracy and aiding and abetting, the Trustee seeks to impose what would be unprecedented "vicarious" liability on special counsel for a debtor. There is no basis in the law for such secondary liability, and as shown below, these claims must be dismissed.

Defendants also move to dismiss or, in the alternative, to strike all claims in which the Trustee attempts to recover from Orrick and Ms. Dempsey monies that TMST paid to other third parties via allegedly fraudulent transfers. These payments total almost $6 million for such things

as payments made to vendors (more than $1.1 million), salaries or bonuses paid to employees (more than $1 million), and payments made to TMAC for management fees and expense reimbursements (approximately $3 million). While the trustee has sued four former TMST employees who allegedly received improper wages, he has failed to name the vendors, another former TMST employee and founder of SAF who supposedly received a bonus of $270,000, or TMAC, which allegedly received approximately $3 million from TMST. Instead, he attempts to transform those fraudulent transfer claims into "damages" claims so that he can try to pursue recovery of the transferred assets from two parties *who did not receive or benefit from the transfers*—Orrick and Ms. Dempsey. Well-settled law does not permit the Trustee to pursue these damages claims.[1]

## ARGUMENT

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the Court to dismiss causes of action that fail to state a claim upon which relief may be granted. On a motion to dismiss, the Court must accept the factual allegations in the complaint as true, but the Court "need not assume the truth of legal conclusions cast in the form of factual allegations," and the factual allegations must be plausible. *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

In two recent opinions, the Supreme Court emphasized that the complaint must plead facts sufficient to support a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. —, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Alleging facts that are "merely consistent with" a defendant's liability does not suffice.

---

[1]By reciting Plaintiff's allegations in this motion, Defendants do not admit their accuracy.

*Twombly*, 550 U.S. at 557.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 129 S. Ct. at 1949.

A motion to dismiss may be granted when the complaint's own allegations demonstrate that it fails to state a claim on which relief can be granted.  *See Weisbuch v. County of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997). As the Seventh Circuit put it, "a plaintiff may plead [himself] out of court."  *Warzon v.* Drew, 60 F.3d 1234, 1239 (7th Cir. 1995) ).  Here, the Trustee has done just that.

## I.    THE COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF A CORPORATE OFFICER'S DUTY OF LOYALTY.

Count XI alleges that Ms. Dempsey was a corporate officer of TMST and that she breached her corporate duty of loyalty to TMST.  Count XI is based solely on Ms. Dempsey's role as an assistant secretary of TMST.  Count XI is thus quite distinct from other claims against Ms. Dempsey that are based on her duties as a lawyer.  Court XI must be dismissed for two reasons:  (1) the complaint does not allege a single fact showing that Ms. Dempsey possessed the managerial authority at TMST necessary for any fiduciary duties to have arisen from her position as assistant secretary, and (2) even if she had some limited fiduciary duties related to her ministerial tasks as an assistant secretary, the complaint fails to allege that she violated such duties.[2]

---

[2]It is not clear whether Maryland recognizes a breach of a fiduciary duty as an independent tort, but for purposes of this motion, we assume that such a claim could theoretically be pleaded.  *See, e.g., Shenker  v. Laureate Education, Inc.,* 983 A.2d 408, 428-29, n.16 (2009) ("we assume, without deciding ... that breach of fiduciary duties is a cognizable tort in Maryland"); and *Int'l. Brotherhood of Teamsters v. Willis Corroon Corp.*, 802 A.2d 1050, 1052, n.1 (2002) ("Maryland does not recognize a separate tort action for breach of fiduciary duty").

**A.     The Complaint Fails To Allege Ms. Dempsey Was A Corporate Fiduciary.**

In determining which state's laws apply, this Court must initially look to Maryland's choice-of-law rules. *See In re Merritt Dredging Co., Inc.*, 839 F.2d 203, 205 (4th Cir. 1988) (bankruptcy courts apply the choice-of-law rules of the forum state). Where claims relate to a corporation's internal affairs, such as claims against directors and officers, Maryland applies the law of the state of incorporation under the "internal affairs doctrine." *Storetrax.com v. Gurland*, 915 A.2d 991, 999-1000 (2007); *NAACP v. Golding*, 679 A.2d 554, 559 (Md. 1996). Since TMST is incorporated in Maryland, the law of Maryland would govern any claims against its corporate officers for breaches of their corporate duties.

The threshold inquiry in determining whether such a claim is adequately pleaded is whether the defendant owed the plaintiff the alleged duty in the first place. *See Alleco Inc. v. Henry & Jeanette Weinberg Foundation, Inc.*, 665 A.2d 1038, 1046 (1995) (the first element of a breach of fiduciary duty claim is "the existence of a fiduciary relationship"). The question before the Court in this case is whether Ms. Dempsey's role as assistant secretary made her an officer with fiduciary duties of the sort the Trustee alleges she breached. We were unable to find any Maryland cases holding — or even addressing — this question. Thus, we must turn to the law of other states for guidance.

Cases outside of Maryland are in agreement that corporate fiduciary obligations are vested only in those who have "some discretion in managing corporate affairs." *GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc.,* 83 Cal. App. 4th 409, 419-21 (2000), overruled on other grounds, *Reeves v. Hanlon*, 33 Cal. 4th 1140 (2004). One without any managerial authority—an officer in name only—does not owe fiduciary duties as a result of that title. *Id.* at 421 ("a 'nominal' officer with no management authority is not a fiduciary."); *Gold v. Sloan*, 486

F.2d 340, 351 (4th Cir. 1973) (defendant whose officer title was merely titular was not an insider for purposes of Section 16(b) liability—his title was "ineffective to clothe him with the reality of an officer"); *Aon Consulting, Inc. v. Midlands Financial Benefits, Inc.*, 748 N.W. 2d 626 (Neb. 2008) (affirming summary judgment for defendant on breach of fiduciary duty claim: vice-president without managerial authority was not a fiduciary); *Alexie, Inc. v. Old South Bottle Shop Corp.*, 345 S.E. 2d 875, 879 (Ga. Ct. App. 1986) (corporate secretary whose title was titular could not be liable as a matter of law for corporation's trademark violations); *Interpretive Release on Rules Applicable to Insider Reporting and Trading*, SEC Release No. 34,18114 (Sept. 24, 1981) ("an employee who does not possess a title may nevertheless be an officer because of significant functions he performs; similarly, *an employee who holds a title may nonetheless not be an officer because his functions and duties are insignificant despite his formal position*") (emphasis added).

Here, the complaint fails to allege any facts to show that Ms. Dempsey had any authority to manage any aspect of TMST's business.  The only allegations in the complaint relating to Ms. Dempsey's alleged corporate fiduciary duties are: (1) the conclusory allegation that she owed such duties as an officer, a legal conclusion dressed up as a factual allegation; and (2) the allegation that Ms. Dempsey was an "assistant secretary" at TMST who drafted minutes of Board meetings.  Complaint ¶¶7, 218.

Even the role of corporate *secretary* is generally considered a ministerial position.  *See e.g., Ideal Food, Inc. v. Action Leasing Corp.*, 413 So.2d 416, 417 (Fl. Dist. Ct. App. 1982) (secretary-treasurer did not have authority to bind a corporation to a lease because "[t]he secretary of a corporation, merely as such, is a ministerial officer, without authority to transact the business of the corporation upon his volition and judgment"); *People v. Int'l Steel Corp.*, 102

Cal. App. 2d Supp. 935, 942-43 (Cal. Ct. App. 1951) ("[t]he secretary of a corporation, merely as such, is a ministerial officer, without authority to transact the business of the corporation upon his independent volition and judgment"). An assistant secretary is that much farther down the corporate food chain. *See, e.g., Lockheed Aircraft Corp. v. Campbell*, 110 F. Supp. 282 (S.D. Cal. 1953) (assistant secretary was not an officer for Rule 16 purposes); *see also* SEC Div. of Corporation Finance, Compliance and Disclosure Interpretations, Exchange Act Sect 16 Q.109.01 (May 23, 2007) (SEC does not include an assistant secretary in the definition of "officer" under Rule 3b-2 of the Securities and Exchange Act of 1934, as amended, and does not consider an assistant secretary to be an officer for purposes of Section 16(a) disclosure requirements under the Exchange Act); P. Romeo & A. Dye, *Section 16-Insider Reporting and Short-Swing Liability, Treatise and Reporting Guide*, §2.01, p. 73 (3rd ed. 2008) ("Generally, an assistant officer (e.g. an assistant vice president or assistant controller) is not subject to Section 16, even where the assistant's chief is an insider").

The complaint is devoid of allegations showing that Ms. Dempsey had any management role at TMST or discretion to control its corporate affairs, much less one that would give rise to corporate fiduciary duties. At most, the complaint shows that she drafted corporate minutes that others edited, she accepted their edits and then submitted the minutes to the Board for approval. Complaint, ¶¶123-126. But one need not have fiduciary duties to record minutes of a meeting— *any* person who attends a Board meeting can be designated to take notes and prepare formal minutes.

Having failed to adequately allege the first element—the existence of the fiduciary duty— Count XI must be dismissed.

**B.    Even If Ms. Dempsey Were A Corporate Fiduciary, The Complaint Fails To Allege Any Breach Of Her Assistant Secretary Duties.**

It is important to note that Count XI alleges that Ms. Dempsey breached her *own* fiduciary duties as assistant secretary.  Complaint ¶218, 219 ("As *officers*, . . . Ms. Dempsey owed a duty of loyalty to TMST and/or TMHL, . . . and [the other defendants and] Ms. Dempsey breached their *respective* duties of loyalty . . . ").  Therefore, this claim rises or falls on whether it pleads facts to show that she did so.  Assuming that Ms. Dempsey's role as an assistant secretary did give rise to some fiduciary duties, those duties would obviously need to arise from her responsibilities as an assistant secretary.  Here, Count XI fails because none of the conduct alleged in Count XI had anything to do with her role as an assistant secretary.  Labeling conduct as a "breach of fiduciary duty" is not a magic wand that turns any allegedly wrongful conduct by a fiduciary into a breach of fiduciary duty claim.  *See Kann v. Kann*, 690 A.2d 509, 521 (Md. 1997) ("Our holding means that identifying a breach of fiduciary duty will be the beginning of the analysis, and not its conclusion.  Counsel are required to identify the particular fiduciary relationship involved [and] *identify how it  was breached* . . . .")  The complaint sets forth a list of Ms. Dempsey's alleged breaches of loyalty, but none of the alleged breaches had anything to do with Ms. Dempsey's role as an assistant secretary.

The breaches of the duty of loyalty alleged in Count XI break down into two categories: (1) misappropriation of assets (Complaint ¶¶218-19) and (2) advice to the TMST Board.  Complaint ¶220.

**Misappropriation of assets.**  Starting with the first category, the complaint itself shows that Ms. Dempsey was not involved in any of the alleged  "misappropriation" conduct.  The most obvious example is the allegation that she took Unauthorized Payments.  Complaint ¶219.  The complaint itself defines "Unauthorized Payments" as bonus payments made to the four other

- 7 -

individual defendants, *not* to Ms. Dempsey.  *Id.* ¶154.  Thus, on its face, the complaint shows

that Ms. Dempsey did not receive any Unauthorized Payments.  Next, the complaint alleges—in

conclusory fashion—that Ms. Dempsey breached her duty of loyalty by facilitating the Vendor

Payments to benefit the new company (SAF Financial, Inc. or "SAF"), misappropriating

TMST's confidential and proprietary documents, and using the TMST's employees to provide

services solely for the benefit of SAF.  *Id.* ¶219.  But the complaint's more detailed factual

allegations about these events show that Ms. Dempsey was not involved in any of these alleged

activities.  *See id.* ¶¶89-96 (re vendor payments—no reference to Ms. Dempsey having any role

in making allegedly improper vendor payments);[3] ¶¶97-106 (re misappropriation of TMST's

documents and records—no reference to Ms. Dempsey); ¶¶137-148 (re manipulation of TMST

payroll and use of TMST offices and personal property—no reference to Ms. Dempsey).

**Advice to the Board.**  The second category of Ms. Dempsey's alleged breaches concerns

advice she gave to TMST's Board of Directors, and includes conclusory allegations that she: (1)

made unspecified misrepresentations to TMST's Board or the Company's outside professionals;

(2) amended the TMAC Amended Management Agreement; and (3) failed to make full and

candid disclosures to TMST board members and/or professionals about unidentified matters.  *Id.*

¶220.  As to these allegations, the complaint does not identify how any of such alleged conduct

arose out of Ms. Dempsey's role as an assistant secretary.  The first allegation—

"misrepresentations"—fails as a matter of basic pleading standards because the complaint does

---

[3]The only mention of Ms. Dempsey in the allegations regarding vendor payments is that she sent an email suggesting that if a separate company were to be formed, it might want to *license* certain software *directly from a company that provides the software* — the exact opposite of suggesting or facilitating a scheme to have TMST pay vendors for software the new company might want.  Complaint, ¶89.

not identify a single actual misrepresentation that Ms. Dempsey made. Standing alone, the conclusory allegation that Ms. Dempsey made misrepresentations to TMST's Board or professionals does not suffice to state a claim under Rule 8, let alone under the higher pleading standard that applies to an intentional misrepresentation claim. *See Twombly*, 550 U.S. at 555; Fed. R. Civ. Proc. §9. In addition, because the complaint does not allege any misrepresentations, it obviously fails to plead that Ms. Dempsey made these unidentified alleged misrepresentations in her role as an assistant secretary.

The other two alleged breaches in this category concern advice Ms. Dempsey allegedly gave or failed to give the Board about amending the TMAC management agreement and her alleged failure to disclose her representation of SAF or information about SAF's activities. As the complaint elsewhere acknowledges, all of these alleged breaches relate to Ms. Dempsey's conduct as an attorney, not as an assistant secretary. Complaint ¶¶244-45 (alleging Ms. Dempsey owed a duty of loyalty as an attorney for TMST and that she breached this duty by, *inter alia*, assisting in negotiating and drafting the revised Amended Management Agreement, failing to disclose to the Board that Messrs. Goldstone and Simmons were not merely looking at forming a thrift, and failing to disclose to the Board that she was representing Messrs. Goldstone and Simmons in their pursuit of the thrift opportunity).

In sum, all but two of the complaint's allegations that Ms. Dempsey breached some duty she had as an assistant secretary actually describe conduct of other parties (such as the vendor payments or work done by SAF employees), not Ms. Dempsey's own conduct. The two allegations that are more factually detailed—allegations concerning the TMAC management agreement and disclosures regarding her representation of SAF—do not constitute a breach of any duty that Ms. Dempsey owed *in her capacity as an assistant secretary*. Thus, even if Ms.

- 9 -

Dempsey had some limited fiduciary obligations as an assistant secretary, there is no allegation that she failed to faithfully carry out those particular obligations. For all the reasons described above, Count XI must be dismissed.

## II.    THE SECONDARY LIABILITY CLAIMS MUST BE DISMISSED

### A.    Choice of Law.

The claims for civil conspiracy and aiding and abetting breaches of fiduciary duty (Counts XIII and XIV respectively) are claims that attempt to make Ms. Dempsey liable for the acts of others, and are called "secondary" or "vicarious" liability claims. These claims require the Court to apply the law of two states. As noted above, this Court must initially look to Maryland's choice-of-law rules to determine which states' laws apply. *See In re Merritt Dredging Co., Inc.*, 839 F.2d at 205 (bankruptcy courts apply the choice-of-law rules of the forum state).

Two of Maryland's choice-of-law principles are relevant to the complaint's causes of action for aiding and abetting and civil conspiracy. First, as discussed above, Maryland applies the law of the state of incorporation where claims relate to a corporation's internal affairs, such as claims against directors and officers. *Storetrax.com*, 915 A.2d at 999-1000; *NAACP*, 679 A.2d at 559. Second, Maryland applies the doctrine of *lex loci delecti*, which holds that the law of the state where the injury took place applies to tort claims. *See*, *e.g.*, *Mohammad v. Toyota Motor Sales, U.S.A., Inc.*, 947 A.2d 598, 602 (Md. App. 2008) (When the tort occurred in many states, "we apply the law of the State where the injury—the last event required to constitute the tort—occurred.").

When confronted with a cause of action for aiding and abetting a breach of fiduciary duty, most courts hold that the **aiding and abetting portion** of the claim is governed by the state where the harm occurred, while the part of the claim that pertains to **a corporation's internal**

- 10 -

**affairs (breach of fiduciary duty)** is governed by the state of incorporation.  *See*, *e.g.*, *In re Magnesium Corp. of Am.*, 399 B.R. 722, 742 (S.D.N.Y. 2009) (holding that New York's statute of limitations applied to the tort of aiding and abetting since the harm occurred in New York, where the corporations had its principal place of business, but that Delaware law determined "matters relating to the duties of officers and directors to the corporations they serve"); *Solow v. Stone*, 994 F. Supp. 173, 177 (S.D.N.Y. 1998) (same); *In re Verilink Corp.*, 408 B.R. 420, 425 (N.D. Ala. 2009), reversed on other grounds, 410 B.R. 697 (N.D. Ala. 2009) (in an action for aiding and abetting breach of fiduciary duties concerning a Delaware corporation, the court applied Alabama's statute of limitations law to the tort claim, because the harm occurred in Alabama); *but see Buckley v. Deloitte & Touche USA LLP*, No. 06 Civ. 3291, 2007 WL 1491403 *13 (S.D.N.Y. May 22, 2007) (applying the law of the state of incorporation to aiding and abetting breach of fiduciary duty claim).

Here, TMST is incorporated under the laws of Maryland, but has its principal place of business in New Mexico.  Complaint ¶19.  Accordingly, the question of whether there was any breach of corporate fiduciary duty is governed by Maryland law, pursuant to its internal affairs doctrine.  But all other aspects of the aiding and abetting and civil conspiracy claims—such as whether such claims are cognizable—are governed by New Mexico law, because any purported injury TMST suffered would have occurred in the state where TMST conducted its business.

**B.    The Complaint Fails To State A Claim For Aiding And Abetting.**

The claim against Ms. Dempsey for aiding and abetting (Count XIV) must be dismissed, because under New Mexico law, a fiduciary cannot be held liable for aiding and abetting another's breach of fiduciary duty.  *Rael v. Page*, 222 P.3d 678, 685 (N.M. Ct. App. 2009) (affirming defendants' motion to dismiss a claim against several corporate directors for aiding

and abetting each other to breach their fiduciary duties).  As the *Rael* court explained, aiding and abetting liability provides a mechanism for an injured party to seek relief from a *non*-fiduciary who aided a fiduciary in that fiduciary's breach.  "Extending aiding and abetting liability to a party already owing fiduciary duty is inconsistent and duplicative of this principle because a fiduciary is already liable for the breach."  *Id.* at 684-85.  The court reasoned that a secondary liability cause of action serves no purpose when each defendant may be held principally liable.  "To the extent the Defendants assisted or encouraged one another in breaching fiduciary duties, they may be found principally liable for the[ir] breach.  But extending aiding and abetting liability in such situations is not supported by law."  *Id.* at 685.

Here, the complaint charges Ms. Dempsey with aiding and abetting breach of fiduciary duties by Messrs. Goldstone and Simmons.  But the complaint also alleges that Goldstone, Simmons and Ms. Dempsey were each fiduciaries.  Complaint ¶¶233 (Goldstone), 218 (Simmons), and 244 (Dempsey).  In fact, the complaint alleges that Ms. Dempsey owed fiduciary duties to TMST as a corporate officer *and* as an attorney.  Complaint, ¶244 ("At all relevant times an attorney-client relationship existed between Dempsey and the Debtors whereby Dempsey owed the Debtors a fiduciary duty of trust and loyalty.").  Given the Trustee's own allegations, the New Mexico rule precludes the Trustee from asserting secondary liability claims against Ms. Dempsey for breach of fiduciary duty.[4]

---

[4]As noted above, Ms. Dempsey disputes that she had any fiduciary duties as a corporate officer.

C.   **The Complaint Fails To State A Claim For Conspiracy To Breach Fiduciary Duties.**

Count XIII of the complaint alleges that Ms. Dempsey and the other individual defendants conspired with each other to breach their respective duties of loyalty and to misappropriate certain tangible and intangible assets from TMST.  In Claim XI, the Trustee makes clear that the misappropriation claims are a subset of a claim for breach of the duty of loyalty.  Complaint ¶219.  The conspiracy claim fails for the same reason that the aiding and abetting claim fails: the device of "conspiracy" cannot be used to impose secondary liability on a fiduciary for someone else's breach of their own fiduciary duty.[5]

As with aiding and abetting, a conspiracy claim is a device for extending liability to non-tortfeasors when they assist others who commit torts.  *See e.g., Halberstam v. Welch*, 705 F.2d 472, 476-77 (D.C. Cir. 1983) (discussing the origin of both torts and noting that aiding and abetting and conspiracy are "two variations" of the original legal theory of the joint tort imposing liability for concerted action); *Kipperman v. Onex Corp.*, 411 B.R. 805, 870 (N.D. Ga. 2009) ("[T]he court views civil conspiracy and aiding and abetting as *theories of liability* as opposed to discrete causes of action. That is, civil conspiracy and aiding and abetting express another mechanism for affixing responsibility for an underlying wrong") (emphasis added).  Particularly in the context of a breach of fiduciary duty, courts have acknowledged that the claims for aiding

---

[5]As pleaded, the complaint appears to allege that Ms. Dempsey conspired to breach her own duty of loyalty.  Complaint ¶229 (the defendants entered into "an understanding and agreement by and among them to breach their *respective* duties") (emphasis added).  It is axiomatic that a party cannot conspire with him or herself.  *See e.g,, Shenker*, 983 A.2d at 428 ("Civil conspiracy is a combination of two or more persons . . .") (internal citation omitted).  Therefore, we must assume that the Trustee intended to allege that each fiduciary conspired to help the others breach the others' fiduciary duties.

and abetting and conspiracy are very closely related.  *See Allied Capital Corp. v. GC-Sun Holdings L.P.*, 910 A.2d 1020, 1038, n.41 (Del. Ch. 2006) (citing authorities).

The complaint alleges that Ms. Dempsey, Mr. Goldstone, Mr. Simmons, Ms. Burns and Ms. Pell were fiduciaries (see e.g. Complaint ¶¶218 (each defendant owed duty of loyalty as corporate officer), 229 (same), 233 (Messrs. Goldstone and Simmons owed fiduciary duties and duties of loyalty, good faith and care) and 244 (Ms. Dempsey owed a fiduciary duty of trust and loyalty as attorney for TMST)).  Under New Mexico law, Ms. Dempsey cannot be held liable for conspiracy to breach her own fiduciary duties or for conspiring to help the other defendants breach their fiduciary duties.  *Rael*, 222 P.3d at 685.

## III.    THE TRUSTEE MAY NOT RECOVER ANY FRAUDULENTLY TRANSFERRED ASSETS FROM A NON-TRANSFEREE AND NON-BENEFICIARY.

Ms. Dempsey and Orrick move to dismiss, or in the alternative to strike, Counts XI, XIII, XIV, and XV thru XVIX to the extent that they assert claims that seek to recover as purported "damages" what are in reality disguised claims for fraudulent transfers.[6]

The Trustee is entitled to recover fraudulent transfers only from the transferee or someone who benefitted from the transfer.  11 U.S.C. §550(a).  "[T]there is no such thing as liability for aiding and abetting a fraudulent conveyance or conspiracy to commit a fraudulent transfer as a matter of federal law under the [Bankruptcy] Code."  *In re Fedders North America*, 405 B.R. 527, 549 (D. Del. 2009); *see also Mack v. Newton*, 737 F.2d 1343, 1357-58 (5th Cir. 1984) ("[T]he general rule under the Bankruptcy Act is that one who did not actually receive any of the

---

[6]*See Wilkerson v. Butler*, 229 F.R.D. 166, 172 (E.D. Cal. 2005) (motion to strike is appropriate to eliminate claims for damages that are not recoverable as a matter of law).

property fraudulently transferred . . . will not be liable for its value, even though he may have participated or conspired in the making of the fraudulent transfer.").

The Trustee in this case has tried to avoid this rule by simply labeling his claims as tort claims.  But the Maryland District Court has held that a trustee may not end-run this rule through the expedient of simply relabeling a fraudulent conveyance as a tort and seeking to recover the fraudulently transferred assets in the form of damages.  *In re Ampat Southern Corp.*, 128 B.R. 405 (D. Md. 1991).

In *Ampat*, the trustee sued a director of the debtor company under theories of fraudulent transfer and breach of fiduciary duty, seeking the same amount of money under each claim.  The court rejected the fraudulent transfer claim because the director had not received the transferred property and, therefore, "[had] no liability for its return as a matter of law."  *Id.* at 411.  Turning to the breach of fiduciary duty claim, the court held that it too was "defective," because "[t]he trustee may not do indirectly what he cannot do directly."  *Id.*  The court continued, "[i]f it is acknowledged that the trustee may not recover fraudulent transfers from a non-transferee, then *it follows that he may not recover funds in the same amount by the mere expedient of referring to them by a different name, i.e. 'damages.'*"  *Id.*  (emphasis added).

Here, as in *Ampat*, many of the enumerated "damages" the Trustee claims Ms. Dempsey caused are the same funds that the Trustee also seeks to recover as fraudulent transfers.  For example:

- The Trustee claims Ms. Dempsey caused $325,000 in damages to TMST as a result of allegedly improper bonus payments made to co-defendants Goldstone, Simmons, Burns and Pell.  Complaint ¶¶221(A), 231(A).  Yet the Trustee seeks to recover these

same payments under a theory of fraudulent transfer from the actual transferees, Goldstone, Simmons, Burns and Pell. *Id.* ¶154.

- The Trustee also claims Ms. Dempsey caused $1.1 million in damages to TMST based on allegedly improper payments to vendors. *Id.* ¶¶221(B), 231(B). The Trustee seeks to recover the same payments on a fraudulent transfer theory from Messrs. Goldstone and Simmons and SAF, the alleged beneficiaries of the transfers. *See* Complaint, Count III, ¶¶170-176.

The Trustee makes no allegation that Orrick or Ms. Dempsey received or benefitted from any of these alleged fraudulent transfers, nor could he plausibly do so. Under *Ampat*, these claims must be stricken.

The complaint also asserts that TMST made improper pre-petition transfers to various third parties who are inexplicably absent from the list of defendants. For example:

- The Trustee alleges that TMST paid TMAC almost $3 million for expenses that it was not legally required to pay. And yet, TMAC is not named as a defendant. Instead, the Trustee seeks to recover this $3 million from Ms. Dempsey as purported "damages." Count XI (¶221C & E); Count XIII (¶231C & F).

- The Trustee alleges that another former officer of TMST, Charles MacIntosh, received a $270,000 bonus which he was not entitled to receive. MacIntosh is not named as a defendant. Instead, the Trustee seeks to recover this bonus payment from Ms. Dempsey, who did not receive it. Count XI (¶221F); Count XIII (¶231G).

There are several other claims for "damages" that are essentially claims that TMST did not receive fair value when certain of its so-called assets were used for SAF's benefit: (a) the value of work product that Goodwin Proctor and Deloitte created for TMST; (b) the value of salaries

- 16 -

the Debtor paid to SAF employees; and (c) SAF's use of TMST's office space and computers. To the extent these claims are proven, the Trustee is limited, under *Ampat*, to pursuing such transfers from the transferees or beneficiaries. Therefore, the Court must strike paragraphs 221(A)-(C), (E)-(J) and 231(A)-(C), (F)-(K).[7]

In Counts XV, XVI, XVII, XVIII, and XIX, the complaint asserts claims for $10 million in damages from Ms. Dempsey and Orrick. The complaint does not explain the basis of these damages, but to the extent these alleged damages include the same amounts identified in Count XI (¶221(A)-(C), (E)-(J)) or Count XV (¶231(A)-(C), (F)-(K)) of the complaint, those claims should be dismissed.[8]

## IV.   COUNT XX MUST BE DISMISSED OR STAYED BECAUSE IT IS DUPLICATIVE OF THE U.S. TRUSTEE'S COMPLAINT FOR DISALLOWANCE AND DISGORGEMENT OF ORRICK'S POST-PETITION FEES.

Orrick moves to dismiss or strike Count XX because it is entirely duplicative of another federal action currently pending in this Court, the U.S. Trustee's Complaint for Denial and Disgorgement of Fees (Docket 774). "[T]his Court has the authority to administer its docket and dismiss an action that is duplicative of another federal lawsuit." *McReady v. O'Malley*, No. RWT 08cv2347, 2010 U.S. Dist. LEXIS 20350, *13-*14 (D. Md. Mar. 8, 2010). Dismissing

---

[7] In Count XIV, the Trustee alleges that TMST suffered $12 million in damages (the same amount alleged in Counts XI and XIII), without any breakdown of the bases for the damage figure. Because the amount is the same as in Counts XI and XIII, Defendants presume that the damages alleged in Count XIV are the same as those alleged in Counts XI and XIII and move to strike all portions of that damage claim that are in reality a disguised claim for fraudulent transfer.

[8] For the Court's convenience, Exhibit A to this Memorandum sets forth the portions of the Complaint that Defendants move to strike.

duplicative actions, fosters judicial economy and "protect[s] parties from 'the vexation of concurrent litigation over the same subject matter.'" *Id*.

Count XX seeks an order denying compensation to Orrick for its post-petition fees and requiring Orrick to disgorge any post-petition fee payments on the grounds that Orrick held an interest adverse to TMST with respect to the matters for which it was employed. ¶278. The U.S. Trustee's complaint seeks identical relief on identical grounds. U.S. Trustee's Complaint, Count II. It is inappropriate to force Orrick to respond to two sets of discovery and litigate two identical actions seeking the same relief. It would also be a waste of this Court's judicial resources. This Court should therefore exercise its power to dismiss or strike Count XX.[9]

## CONCLUSION

For all of the above-state reasons, the Court should dismiss Counts XI (breach of duty of loyalty), Counts XIII (civil conspiracy), XIV (aiding and abetting) and XX (Disallowance of Fees) against Orrick. In addition, the Court should dismiss Counts XV, XVI, XVII, XVIII, and XIX to the extent that they assert claims for damages based on assets the Trustee claims were fraudulently transferred.

---

[9]In conversation with Orrick's counsel, the Chapter 11 Trustees acknowledged that there is clear overlap between Count XX and the U.S. Trustee's complaint and recognized the need for some procedural solution. But he was unwilling to dismiss Count XX to address this overlap. The Assistant U.S. Trustee also acknowledged the overlap and the need for the two actions to be reconciled, but he was also unwilling to withdraw his case.

Dated:  May 3, 2010

Respectfully Submitted,

_____

Richard M. Kremen (Bar No. 00532)
Dale K. Cathell (Bar No. 26924)
DLA Piper LLP (US)
6225 Smith Avenue
Baltimore, Maryland 21209
Telephone:  (410) 580-4191
Facsimile:  (410) 580-3191
richard.kremen@dlapiper.com
dale.cathell@dlapiper.com

James L. Lopes (*Pro Hac Vice Admission Pending*)
Pamela Phillips (*Pro Hac Vice Admission Pending*)
Amy L. Bomse (*Pro Hac Vice Admission Pending*)
Howard Rice Nemerovski Canady Falk & Rabkin
Three Embarcadero Center, Seventh Floor
San Francisco, California 94111
Telephone:  (415) 434-1600
Facsimile:  (415) 677-6262
Jlopes@howardrice.com
pphillips@howardrice.com
abomse@howardrice.com

*Attorneys for Orrick Herrington & Sutcliffe LLP and Karen Dempsey*

- 19 -